JUL 29 2005

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                      CIVIL ACTION
                                              DOCKET NO. RE-05-032

North Sebago Shores, LLC, Randal E. Millett,
Timothy R. Cronin and Christopher J. Cronin,
          Plaintiffs

          v.                          **ORDER**

Barry T. Mazzaglia, trustee,
Mazzaglia Family Trust,
          · Defendant

This case comes before the Court on Plaintiffs North Sebago Shores, LLC,

Randal E. Millett, Timothy R. Cronin and Christopher J. Cronin's (Plaintiffs')

Motion for a Preliminary Injunction. Plaintiffs are seeking to enjoin Barry T.

Mazzaglia, in his capacity as a trustee of the Mazzaglia Family Trust, (the Trust)

from placing swim ropes in a manner that blocks access by boat to an area

known as Third Beach.

## FACTS

Plaintiffs own lots in the Lake Sebago Estates subdivision in Naples,

Maine. All subdivision lot owners hold a deeded easement allowing them access

to an area known as Third Beach for "swimming and sunbathing in common

with others." Although a path runs from Lake Sebago Estates to Third Beach

over land, many subdivision owners get to Third Beach by boat, traveling from a

dock at Lake Sebago Estates, and hauling their boats up onto Third Beach, where

they and their guests swim, picnic, and play volleyball. The Trust, by deed,

owns the property known as Third Beach. This is apparent by the legal

description and other language in the Trust's deed, the recorded survey of the

property, and the express inclusion of land that is "seasonally submerged and sand bars" in the survey description.[1]

In the summer, Third Beach is often filled with boats and jet skis, with other boats waiting for spaces on the beach to open up. Heavy use of Third Beach has resulted in increased garbage on the beach, as well as incidents requiring law enforcement to intervene. In response, the Trust created a protected swim area for its own use and use by easement holders from Lake Sebago Estates. For several successive summers, the Trust has place swim ropes in the water in a way that allows boats to anchor in shallow water next to the beach and allows boat passengers to wade to shore. However, direct access to the beach by boat is largely blocked. One of the Plaintiffs, Randal Millett, is disabled and claims his only practical access to Third Beach is from the water.

On March 4, 2005, Plaintiffs brought their complaint against the Trust, alleging Nuisance and Trespass (Count I), Interference with Easement Rights (Count III) and seeking to have this Court determine the Trust's right to place swim ropes in an area burdened by Plaintiffs' easement (Count II). Plaintiffs also moved for a preliminary injunction, barring the Trust from again installing swim ropes in the area burdened by Plaintiffs' easements pending the outcome of this litigation.

## STANDARD OF REVIEW

---

[1] J. Fritzsche decided the issue of the Trust's ownership of Third Beach, including the seasonally submerged areas and sandbars in RE-03-018, enjoining a defendant in that case, who is not an owner of property at Lake Sebago Estates, from entering Third Beach.

2

A party seeking relief by a preliminary injunction "has the burden of demonstrating to the court that (1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction. *Bangor Historic Track, Inc. v. Dept. of Agric.*, 2003 ME 140, ¶ 9, 837 A.2d 129, 132 (citing *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989); *Ingraham v. Univ. of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982)). ).

"[I]rreparable injury will be more or less presumed from a showing of interference with an easement or right of way, and the injunction may issue if the plaintiff's right is clear." Horton & McGehee, *Maine Civil Remedies* § 5-5(b)(4) at 112 (4th ed. 2004). For example, where an easement provided plaintiffs with their only means of access to their lakeshore property, defendants were enjoined from blocking that access. *LeMay v. Anderson*, 397 A.2d 984, 989 (Me. 1979). However, "[f]ailure to demonstrate that any one of these criteria are [sic] met requires that injunctive relief be denied." *Bangor Historic Track*, ¶ 10, 837 A.2d at 132-33 (citation omitted).

**Criteria 3: Success on the merits.**

Plaintiffs maintain they have a likelihood of success on their statutory nuisance claim, their common law nuisance theory, and their claim of interference with easement rights.

a. Statutory nuisance.

Title 17 M.R.S.A. § 2701 allows a person "injured in his comfort, property or the enjoyment of his estate" by a private or common law nuisance to maintain a civil action. *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 23, 774 A.2d 366, 374. The Law Court has held § 2701 is "intended to apply to those nuisances presently delineated in 17 M.R.S.A. § 2802."[2] *Id.* ¶ 24 (citing *Johnson v. Whitten*, 384 A.2d 698, 702 (Me. 1978)). Here it is difficult to see how Plaintiffs' claim of interference with access to a private lakefront beach by boat can meet any of the statutory definitions under § 2802 of a miscellaneous nuisance. The shallow area around two sand bars is not a navigable river or harbor, there is no source from which people collect water, nor is there a public dock or other common landing

---

[2] § 2802. Miscellaneous nuisances

The erection, continuance or use of any building or place for the exercise of a trade, employment or manufacture that, by noxious exhalations, offensive smells or other annoyances, becomes injurious and dangerous to the health, comfort or property of individuals or of the public; causing or permitting abandoned wells or tin mining shafts to remain unfilled or uncovered to the injury or prejudice of others; causing or suffering any offal, filth or noisome substance to collect or to remain in any place to the prejudice of others; **obstructing or impeding, without legal authority, the passage of any navigable river, harbor or collection of water;** corrupting or rendering unwholesome or impure the water of a river, stream, pond or aquifer; imprudent operation of a watercraft as defined in Title 12, section 13068, subsection 8; unlawfully diverting the water of a river, stream, pond or aquifer from its natural course or state to the injury or prejudice of others; and **the obstructing or encumbering by fences, buildings or otherwise of highways, private ways, streets, alleys, commons, common landing places or burying grounds** are nuisances within the limitations and exceptions mentioned. Any places where one or more old, discarded, worn-out or junked motor vehicles as defined in Title 29-A, section 101, subsection 42, or parts thereof, are gathered together, kept, deposited or allowed to accumulate, in such manner or in such location or situation either within or without the limits of any highway, as to be unsightly, detracting from the natural scenery or injurious to the comfort and happiness of individuals and the public, and injurious to property rights, are public nuisances. 17 M.R.S.A. § 2802 (2004)(emphasis added).

4

place within the meaning of 17 M.R.S.A. § 2802.[3] The likelihood of Plaintiffs'

success on the merits of a claim under these statutes is far from substantial.

b. Common law nuisance

Common law nuisance claims require plaintiffs to show "substantial

interference," such that "the land is reduced in value because of the defendant's

conduct." *Charlton*, ¶ 36, 774 A.2d at 377 (noting that "a good working rule

would be that the annoyance cannot amount to unreasonable interference until it

results in a depreciation in the market or rental value of the land.") *Id.* n.10.

Here, the Plaintiffs have not offered any evidence suggesting that their easement

or lots will be reduced in value if access to Third Beach by boat is blocked or

reduced because of the swim ropes, and their success on the merits under a

common law nuisance theory is also far from clear. Indeed, a plausible argument

could be made that the swim ropes enhance the value of Plaintiffs' easements by

making them more amendable to their stated purposes: swimming and

sunbathing.

c. Easement rights

Finally Plaintiffs maintain they will prevail on a claim of interference with

their easement right. However, on the facts before the Court, their likelihood of

success is uncertain.

---

[3] To read "common landing place" to mean any private swimming area or lakefront beach where people pull a boat ashore, as Plaintiffs suggest, goes far beyond the ordinary meaning of a public, designated landing space. *See, e.g., Sevey's Case*, 6 Me. 118, (1829) (town property dedicated by survey as a "town landing" and constantly used to load stones, lumber, fish and produce since the memory of its oldest inhabitants is a "common landing."); *State v. Wilson*, 42 Me. 9 (1856)(existence of a public landing cannot be established by use alone without some dedication of the land for that purpose by the municipality).

The Maine Law Court has upheld injunctions "to prevent or correct wrongful interference with an easement or right of way." Horton & McGehee, *Maine Civil Remedies* § 5-5(b)(4) at 111 (4th ed. 2004)(citing cases). Construction of language in a deed granting an easement is a question of law and "[t]he scope of a party's easement rights must be determined from the unambiguous language on the face of the deed." *Jordan v. Shea*, 2002 ME 36, ¶ 14, 791 A.2d 116, 121 (citation omitted). However, the court may be asked to determine the extent, not only of the primary easement rights of Plaintiffs (use of Third Beach for swimming and sunbathing), but also their secondary or implied rights and limitations (accessing Third Beach by boat). "The most significant factor concerning the extent of an easement is the manner in which the easement was created." 4 POWELL ON PROPERTY § 34.12 at 34-134.

Here Plaintiffs' rights to swim and sunbathe at Third Beach are clear from the plain language in the deed. Access between Plaintiffs' dominant and the Trust's servient estates was provided by the developer of Lake Sebago Estates at the time the easement was created, by way of a path and footbridge running directly from a common area of Lake Sebago Estates to Third Beach. Plaintiffs' secondary rights to access Third Beach by water, rather than over the pathway created between the adjacent properties are at issue.

The Law Court has held that the secondary rights necessary for the reasonable enjoyment of an easement pass with that easement. *Gutcheon v. Becton*, 585 A.2d 818, 822 (Me. 1991). However, easement holders must

6

exercise those rights in a reasonable manner. *Id. See also, Kaler v. Beaman,* 49 Me. 207 (1860)(dominant holder must restrict his use of an easement according to the terms or intent of the grant and in a reasonable manner).

Where, as here, grantor and grantees have expressly been granted rights "in common" with others, each party's right "may only be asserted to the point where its exercise does not infringe the reasonable use and enjoyment . . . by other holders of an identical easement." *Poire v. Manchester,* 506 A.2d 1160, 1162 (Me. 1986). The Law Court held a party with rights in common was entitled to relief "upon showing that he will be disturbed or obstructed in the exercise of his rights." *Id.* (citation omitted).

In *Poire,* servient and dominant owners had rights "in common" to use a beach of limited size on Sebago Lake. Use by the dominant owners and their guests reached the point where the beach became densely crowded, and there were tense confrontations between the two groups of users. The Law Court found for the servient owners, finding that the relevant inquiry where rights were held in common was not whether the beach easement was overburdened, but whether the actual use of the beach by dominant owners was reasonable in comparison with the actual use made by servient owners. *Id.* The Law Court also held that "[w]hat is a proper and reasonable use as distinguished from an unreasonable use is a question of fact." *Id.*

Here the facts could easily be found to show that Plaintiffs' use of Third Beach to bring ashore boats, jet skis, guests, organized sports, and

7

possibly members of the general public, is unreasonable and has interfered with the Trust's use and enjoyment of rights held in common to swim and sunbathe. Such use may be found to be unreasonable in light of the access by land expressly created at the time the easement was created by Lake Sebago Estates' developer. Such use may further be found unreasonable in light of the Trust's compromise plan allowing boats to anchor nearby, but not park on the beach, and to allow handicapped persons to make use of its private dock.

Furthermore, Plaintiffs' chance of success on the merits is not substantially possible where the Law Court has held that a servient owner need not allow his safety to be compromised by allowing rapidly moving, motorized vehicles to travel over his property that was subject to a *qualitatively* different sort of easement, simply to "suit the convenience of the owners of the dominant estate." *Davis v. Bruk*, 411 A.2d 660, 666 (Me. 1980).

Finally, Plaintiffs here are seeking an injunction, not to preserve the status quo, which for several seasons has included the Trust's installation of the swim rope, but instead Plaintiffs seek an injunction that would "give the plaintiff as a practical matter most or all of the relief ultimately sought." *Ingraham v. U. of Me. at Orono*, 441 A.2d 691, 693 (Me. 1982)). Plaintiffs fail to meet their burden of showing they have a substantial possibility of success on the merits. *Bangor Historic Track,* ¶ 10, 837 A.2d at 132-33.

8

Because they have failed to meet their burden of showing a likelihood of success on the merits, Plaintiffs North Sebago Shores, LLC, Randal E. Millett, Timothy R. Cronin and Christopher J. Cronin's Motion for a Preliminary Injunction is hereby DENIED.

Date___June 10, 2005___

Justice, Superior Court

: COURTS
ıd County
ɔx 287
ıe 04112-0287

DANIEL MITCHELL ESQ
PO BOX 9729
PORTLAND ME 04104

COURTS
ıd County
ıx 287
e 04112-0287

CHRISTOPHER NEAGLE ESQ
PO BOX 9711
PORTLAND ME 04104-5011

STATE OF MAINE
CUMBERLAND COUNTY, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-05-032

North Sebago Shores, LLC,
Randal E. Millett, Timothy R. Cronin
and Christopher J. Cronin,
          Plaintiffs

          v.                                    ORDER

Barry T. Mazzaglia, trustee, Mazzaglia
Family Trust,
          Defendant


          This case comes before the Court on Plaintiffs' Motion to Alter or Amend

its Order of June 10, 2005, denying Plaintiffs' motion for a temporary restraining

order.

          The parties are engaged in litigation concerning the right of Plaintiffs,

owners of property in the Lake Sebago Estates subdivision, to gain access to their

easement to Third Beach by boat, rather than by way of the path provided by

Lake Sebago Estates when the easement was created. The Defendant Trust owns

Third Beach subject to the easement and has erected swim ropes that restrict the

ability of boaters to get to Third Beach by water. Boat owners from Lake Sebago

Estates can and do anchor nearby and make use of the beach. On June 10, 2005,

this Court denied Plaintiffs' motion for a temporary restraining order barring

installation of the ropes when Plaintiffs failed to meet their burden of showing a

likelihood of success on the merits of their claim. This Court found Plaintiffs'

success unlikely, particularly in light of the Law Court decisions on the rights of

parties who hold rights in common to an easement, and the unreasonableness of

subjecting Third Beach to heavy boat traffic, when the easement is for swimming and sunbathing only.

Plaintiffs bring a motion "under Rule 59(e) and/or 60(b)," arguing first, that this Court incorrectly interpreted the language of Maine's miscellaneous nuisance statute, 17 M.R.S.A. § 2802, in a way the materially alters their chance of success on the merits of their nuisance claim (Count I). Plaintiffs also argue that the June 10, 2005 decision was based on a false representation by the Defendant that Plaintiff Randal Millet (Millet), who is confined to a wheelchair but who owns and uses a boat, was permitted to use the Defendant's dock to access Third Beach. The Defendant has withdrawn this offer, which Millet had previously declined, in light of the ongoing litigation between the parties.

I. Plaintiffs' Nuisance Claim.

Pursuant to M. Civ. R. 60(b)(1), relief from an order may be granted for "mistake, inadvertence, surprise or excusable neglect." Here the Court agrees with Plaintiffs that the meaning of the term "collection of water" in 17 M.R.S.A. § 2802 refers to lakes and ponds, and includes legally unauthorized impeding or obstructing of passage in those bodies of water in the definition of miscellaneous nuisances.[1] To the extent the Order of June 10, 2005 suggests otherwise, it stands corrected.

---

[1] § 2802. Miscellaneous nuisances

The erection, continuance or use of any building or place for the exercise of a trade, employment or manufacture that, by noxious exhalations, offensive smells or other annoyances, becomes injurious and dangerous to the health, comfort or property of individuals or of the public; causing or permitting abandoned wells or tin mining shafts to remain unfilled or uncovered to the injury or prejudice of others; causing or suffering any offal, filth or noisome substance to collect or to remain in any place to the prejudice of others; **obstructing or impeding, without legal authority, the passage of any navigable river, harbor or collection of water;** corrupting or rendering unwholesome or impure the water of a river, stream, pond or aquifer; imprudent operation of a watercraft as defined in Title 12, section 13068, subsection 8; unlawfully diverting the water of a river, stream, pond or aquifer from its natural course or state to the injury

Nonetheless, this Court found and finds Plaintiffs do not meet their burden of showing a substantial likelihood of success on the merits of their miscellaneous nuisance claim. To succeed, Plaintiffs will need to persuade a trial court that placing a swim rope across a swim area in a cove near two privately-owned sand bars near the shore obstructs boat passage on Sebago Lake, and is outside the Defendants' legal authority, where Defendants own title to the area in question and where an easement for boating is not provided.

Nothing in the maps or record before this Court suggests the Defendant has placed ropes over anything other than its own property. Nor is there evidence before the Court suggesting the Defendant has violated any State or other regulation regarding this placement. Plaintiffs have not persuaded this Court that they are substantially likely to succeed in arguing the Defendant has no authority to protect its right in common with Plaintiffs to reasonable use of an easement for swimming and sunbathing by barring boat traffic in the swimming area and on the beach.

## II. Mr. Millet's Rights of Access

Plaintiffs further suggest that the Defendant's refusal to allow Plaintiff Millet to make use of the Defendant's dock alters this Court's analysis of Plaintiffs' likelihood of success on their claim of interference. Under the Law Court's holding in *Poire v. Manchester*, requiring "reasonable" use of easement

---

or prejudice of others; and the obstructing or encumbering by fences, buildings or otherwise of highways, private ways, streets, alleys, commons, common landing places or burying grounds are nuisances within the limitations and exceptions mentioned. Any places where one or more old, discarded, worn-out or junked motor vehicles as defined in Title 29-A, section 101, subsection 42, or parts thereof, are gathered together, kept, deposited or allowed to accumulate, in such manner or in such location or situation either within or without the limits of any highway, as to be unsightly, detracting from the natural scenery or injurious to the comfort and happiness of individuals and the public, and injurious to property rights, are public nuisances. 17 M.R.S.A. § 2802 (2004)(emphasis added).

rights held in common with others, and other case law, this Court found it far from "substantially possible" that Plaintiffs' proposed and past use of Third Beach would be found reasonable in a trial on the merits. 506 A.2d 1160, 1162 (Me. 1986). This Court listed a number of factors in its reasonableness analysis, only one of which was the Defendant's previous willingness to accommodate Plaintiff Millet. The falling away of that factor does not change the reasonableness balance in Plaintiffs' favor, in light of the remaining factors weighing on the side of the Defendant, and discussed in detail in this Court's Order.

Although it has no bearing on this Motion, this Court welcomes the Plaintiffs' suggestion at oral argument that a compromise might be reached by the parties making some, but not all, of Third Beach accessible to Plaintiffs' boats. However neither this Court's inadvertence in the matter of the statutory language of 17 M.R.S.A. § 2802, nor the Defendant's unwillingness to accommodate Plaintiff Millet at the Defendant's dock alter this Court's analysis of the likelihood of Plaintiffs' success on the merits of their claims for purposes of a temporary restraining order. Plaintiffs Motion to Alter or Amend its Order of June 10, 2005 is hereby DENIED.

Dated _August 2, 2005_

_____
Justice, Superior Court

4

CHRISTOPHER NEAGLE ESQ
PO BOX 9711
PORTLAND ME 04104-5011

P|

DANIEL MITCHELL ESQ
PO BOX 9729
PORTLAND ME 04104-5029

Dı1

STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: RE-05-032

* * * * * * * * * * * * * *

NORTH SEBAGO SHORES, LLC

v.

**ORDER**

BARRY MAZZAGLIA, TRUSTEE
OF THE MAZZAGLIA FAMILY
TRUST

This case comes before the Court on Defendant Barry Mazzaglia's, Trustee of the Mazzaglia Family Trust, Motion for Summary Judgment on the claims brought by North Sebago Shores, and Partial Summary Judgment on Defendant's counterclaim for Trespass and Nuisance.

## BACKGROUND FACTS

Since 1990, the Mazzaglia Family Trust (the "Trust") has been the fee owner of a beach commonly known as "Third Beach" located on Sebago Lake. Barry Mazzaglia is the trustee of the Trust. Third Beach is adjacent to the Lake Sebago Estates subdivision.[1] Third Beach abuts a designated "common area" of Lake Sebago Estates at the southern end of the subdivision. There is a pathway that provides access from Lake Sebago Estates to Third Beach. Plaintiffs Randal E. Millet, Timothy R. Cronin and Christopher J. Cronin, own lots in Lake Sebago Estates. In the past, they have all accessed Third Beach via boat. Each of their

---

[1]    Lake Sebago Estates was developed by the Patten Corporation, which also was the original grantor of the property owned by the Trust, including Third Beach.

1

deeds contains the following grant of an appurtenant easement with regard to Third Beach:

> Also conveying without covenants of any kind, to the Grantee herein, its successors and assigns, a non-exclusive easement to use for sunbathing and swimming in common with others the sandbar area located on other land of the Grantor herein situated easterly of the Common Area adjacent to Lot No. 18.

The deeds conveyed to Plaintiffs also contain the following clause regarding fishing rights:

> No activity shall be allowed in the Common Areas that will unduly disrupt the wildlife contained therein, providing, however, that this provision is not intended to prevent fishing within the areas.

During the 1990's, at peak beach times during the summer months it was not uncommon for 70-80 boats and an additional number of jetskis to be landed on Third Beach at one time. In 1994, a boat struck Mr. Mazzaglia's six-year old son while trying to land on the beach. Throughout the years, Mr. Mazzaglia has attempted to prevent members of the public from trespassing on Third Beach.[2] (Pl. SMF ¶ 43). The parties dispute whether Mr. Mazzaglia asked Plaintiffs to discontinue using their boats to access Third Beach. (Pl. SMF ¶ 46).

In 2001, Mr. Mazzaglia erected an Organized Swim Area on Third Beach. He installed line floats and buoys with the words "swim area" on them within approximately 200 feet from the shore.[3] Mr. Mazzaglia's stated purpose for establishing an organized swim area was to protect the sunbathers and swimmers rightfully on the beach from boaters. As a result of the swim area,

---

[2]     He complained to law enforcement authorities on a regular basis. (Pl. SMF ¶ 43)

[3]     According to the maps provided, the length of the swim area runs almost the entire length of Third Beach, approximately 1,200 feet. (Pl. SMF ¶ 47).

2

Plaintiffs' boating access to the beach has been limited to mooring and wading through the water, or landing further down the beach and having to walk approximately 500 feet, approximately one tenth of a mile. It is disputed whether the pathway to Third Beach is always accessible for Plaintiffs. (Def. SMF ¶ 6).[4]

Plaintiffs claim that their beach easement rights encompass accessing Third Beach by boat. As such, they seek a determination that the swim area infringes upon their beach easement rights. Plaintiffs' complaint seeks relief in the form of nuisance and trespass (Count I), declaration of easement rights (Count II), and interference with easement rights (Count III). The Trust's counterclaim seeks relief in the form nuisance and trespass.

## DISCUSSION

In a motion for summary judgment, the Superior Court must examine the evidence in the light most favorable to the nonmoving party to determine whether the parties' statements of material facts and record citations reveal a genuine issue of material fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380.

a.      Plaintiffs' Easement Rights

The first issue in this case is whether the Plaintiffs' deeds include the right to access Third Beach by boat from waters of Sebago Lake in order to exercise their appurtenant easement rights. The construction of a deed is a question of law. *ALC Dev. Corp. v. Walker*, 2002 ME 11, ¶ 10, 87 A.2d 770, 774. In interpreting

---

[4]      Defendant asserts that the pathway accessing Third Beach from Lake Sebago Estates is always accessible. Plaintiffs assert that the pathway is rocky, steep, wet, and floods at times. Furthermore, Mr. Millet is in a wheel chair and cannot access Third Beach via the path.

a deed, the words of the deed are given their general and ordinary meaning to see if they create an ambiguity. *Id.* If the terms of the deed are unambiguous, the Court looks no farther than the language of the deed as a whole to determine the parties' intent. *Id; see Pierre v. Grondin,* 513 A.2d 1368 (Me. 1986). However, if the terms are ambiguous, the court may look to extrinsic evidence for guidance. *Id.*

Here, the deed clearly states that Plaintiffs have a "non-exclusive easement to use for sunbathing and swimming in common with others." This language is clear and unambiguous. It does not say, as could be the case, that the easement is for "boating activities" or "for all purposes."[5] Rather, the easement specifically limits activity on the beach to sunbathing and swimming. Although the sport of fishing is not encompassed in sunbathing and swimming, the deed sanctions fishing in a different section. The deed does not, however, mention boating or boating access to the beach.

According to the regulations established by the Director of the Maine Bureau of Parks and Lands, as authorized by Title 12 MRSA §1894,

> All organized swim areas must be enclosed with line floats . . . No swim area may extend beyond the water safety zone (200 feet from any shore) or one-third the distance to the opposite shore, whichever is less. A State Permit is not necessary to establish an organized swim area.[6]

The Trust, as owner of Third Beach, is within its rights to erect a swim area within the safety zone for the protection of swimmers as long as the

---

[5]     An easement granted the "right to use in common with grantor and others lawfully entitled thereto, the beach . . . for the purpose of bathing and boating." *Poire v. Manchester,* 506 A.2d 1160, 1161 (Me. 1986). Another easement granted "the right to use, for all purposes, a way or road known as the Goodwin Road and Tower Road." *Ware v. Public Service Company of New Hampshire,* 412 A.2d 84, 85 (Me. 1980).

[6]     The rules define an "organized swim area" as: Any developed swim area, especially those areas developed by summer camps, community organizations and other shoreline owners, which is enclosed by line floats and delineated by at least two "Swim Area" markers at the outer off shore bounds.

4

establishment of a swim area does not infringe upon the easement rights of Plaintiffs to enjoy sunbathing and swimming activities. In this case, the swim area does not infringe upon the easement rights of Plaintiffs. Rather, it allows Plaintiffs to enjoy their rights to swim peacefully on Third Beach while providing protection from encroaching motorboats and jetskis.

b.     Laches

Plaintiffs argue that the Trust is barred from attempting to prohibit their recreational boating uses of Third Beach after allowing them to occur for 15 years. The defense of laches is applied when "the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right." *Glew v. Glew*, 1999 ME 114, ¶ 13, 734 A.2d 676, 681. Whether laches applies in a given circumstance is a question of law. *See Id.*

Here, it is undisputed that Mr. Mazzaglia became the owner of Third Beach in 1990, approximately 11 years before he installed the swim line. However, it is disputed whether Mr. Mazzaglia asserted his rights on Third Beach directly to Plaintiffs during this time. Further, Plaintiffs have not demonstrated that their interests have been prejudiced by the delay, if any, of Mr. Mazzaglia's assertion of the rights of the Trust.[7] Accordingly, Plaintiffs have failed to establish the requisite elements of laches to bar the Mr. Mazzaglia's action.

c.     The Trust's Counterclaims

---

[7] Rather, Plaintiffs argue that the assertion of Mr. Mazzaglias rights, by installing the swim line, has prejudiced their rights. That, however, is not the question to be answered.

Turning to the Trust's argument that volleyball and picnicking constitute an excessive use of Plaintiffs' easement rights and amount to trespass and nuisance.[8] An owner of an easement may not exceed his rights either in the manner or extent of its use. *Beckwith v. Rossi*, 175 A.2d 732, 735 (Me. 1961). Easement rights encompass all rights incident or necessary to its proper enjoyment and nothing more. *Id.*

Here, the rights incident or necessary to the proper enjoyment of sunbathing and swimming as they are traditionally understood encompass, among other things, walking the beach, reading a book, collecting shells, picnicking, and playing frisbee or beach volleyball. While daily 40-person volleyball matches may constitute trespass and nuisance, a one-time event does not. The activities engaged in by Plaintiffs to this date do not amount to trespass or nuisance.

The entry is:

The Trust's motion for summary judgment as to all counts of Plaintiffs' complaint is GRANTED.

The Trust's motion for partial summary judgment on its counterclaim for trespass and nuisance is DENIED.

DATE: _March 27, 2006_

Roland A. Cole
Justice, Superior Court

---

[8] The Trust complains that the one 40-person game volleyball match orchestrated as a "peaceful protest" by Plaintiffs constitutes trespass and nuisance.

CHRISTOPHER NEAGLE ESQ
PO BOX 9711
PORTLAND ME 04104

DANIEL MITCHELL ESQ
PO BOX 9729
PORTLAND ME 04112