**ASSOCIATION FOR PRESERVATION OF 1700 BLOCK OF N STREET, N. W., AND VICINITY, et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

**Young Men's Christian Association of Metropolitan Washington, D. C., Intervenor.**

**No. 10903.**

District of Columbia Court of Appeals.

Argued Feb. 18, 1977.

Decided March 29, 1978.

---

Norman M. Glasgow, Washington, D. C., with whom Whayne S. Quin, John F. McCabe, Jr., and Iverson O. Mitchell, III, Washington, D. C., were on the brief, for intervenor.

Before GALLAGHER, YEAGLEY and MACK, Associate Judges.

GALLAGHER, Associate Judge:

This is a petition for review of an order of the District of Columbia Board of Zoning Adjustment (BZA). The BZA order granted an application submitted by the Young Men's Christian Association of Metropolitan Washington, D. C. (YMCA), for: (1) a special exception for roof structures under Zoning Regulation, art. 43, § 4306.2; and (2) a variance from the parking requirements of Zoning Regulation, art. 72, § 7202.1.[1] These relate to the construction of a new YMCA facility at 1701 Rhode Island Avenue, N.W.

Petitioners also contend the new YMCA facility is not a private club within the meaning of Zoning Regulation, art. 12, § 1202. The BZA declined to rule specifically on that question, concluding that the issue "should only be considered as an appeal of the decision of the Zoning Administrator, such appeal to be properly filed and advertised with the Board."[2] This was later accomplished and the issue is squarely presented to us in a subsequently filed proceeding, which we decided this date.[3] Consequently, the only question for review here[4] is whether the BZA erred in granting the parking variance to an organization (YMCA) which in the companion proceed-

Nicholas A. Addams, Washington, D. C., for petitioners.

Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., for respondent. John R. Risher, Jr., Corp. Counsel, and Louis P. Robbins, Principal Deputy Corp. Counsel, Washington, D. C., also entered appearances for respondent. Respondent adopted the brief of the intervenor.

1. At a subsequent oral argument in associated case No. 12202, petitioners confirmed there is no issue left on appeal regarding roof structures. We are left with only one issue, *viz.*, the parking variance.

2. We point out, however, that by admitting some evidence relating to the issue and discussing that evidence, the BZA confused the record. We decided not to compound the confusion, but, instead, to await the subsequent proceeding then on its way to us to decide the issue, as it was there properly presented.

3. *Ass'n for Preservation of 1700 Block of N Street, N.W. v. District of Columbia Board of Zoning Adjustment,* D.C.App., 384 A.2d 668 (No. 12202, decided this date).

4. Petitioners also raised an issue concerning the form of the notice in this case. Since petitioners had actual notice and showed no prejudice, we conclude there is no merit to that issue. *Dupont Circle Citizens Ass'n v. District of Columbia Board of Zoning Adjustment,* D.C. App., 364 A.2d 610, 612–13 (1976).

ing, we have now determined to be a private club within the meaning of Zoning Regulation, art. 12, § 1202.

The Central Branch of the YMCA was located at 18th & G Streets, N.W., and had been at this location since the turn of the century with additions made over the years. Those facilities became obsolete and future improvements and modernizations were found to be not economically feasible. The new location was selected for its more central location and for its proximity to the new subway system. The Executive Director of the Metro YMCA testified that the proposed facility would fulfill four general functions: (1) headquarters for the YMCA of Metropolitan Washington—which includes sixteen operating units; (2) training center for YMCA staff; (3) an international program; and (4) health and fitness. He also testified that the facility would be open, at a maximum, from 6 a. m. until 10 p. m. on Monday through Saturday—with peak hours from 11 a. m. until 2 p. m. and from 4:30 p. m. until 7 p. m. He further stated that the projected membership at the new facility would be 5,600 with a projected daily usage of 1,000.

The following is a summary of findings of fact by the BZA pertinent to the parking issue:[5] The proposed site is vacant, unimproved, and irregularly shaped—with 57.5 feet on 17th Street, 175.61 feet on Rhode Island Avenue, 119.25 feet on the west property line, and 155.55 feet along the north property line. Provision of the required off-street parking with the proposed building on the subject property is impossible due to its irregular shape; furthermore, even if the lot were rectangular in shape, only thirty parking spaces—rather than the

required forty—could be provided with the building. There would be further hardship to the YMCA if the required parking were to be placed below the proposed swimming pool. Each such parking space would cost over $20,000 to provide, whereas the normal cost of each off-street parking space located within a garage structure is between $6,000 and $8,000. Additionally, providing such $20,000 parking spaces would require the YMCA to reduce its proposed recreational facilities. Without drastic reduction in the proposed size of the pool, the number of parking spaces capable of being built would not be materially affected.

A large number of persons using the new YMCA would be walk-in patrons, particularly local workers. Those patrons of the YMCA who would be driving would have available ample off-street parking in the area.[6] There is also public transportation available—with twenty-two existing bus routes serving that vicinity, as well as a Metro subway stop within two blocks.

Significantly, the BZA also found that it had granted a variance as to the location of off-street parking in a prior case (BZA No. 9362) involving part of the proposed YMCA site because of the property's irregular shape. Furthermore, the Municipal Planning Office supported the granting of this parking variance.[7]

In pertinent part the BZA concluded that the parking variance requested is an area variance, the granting of which requires the showing of a practical difficulty sufficient to satisfy that burden. The Board concludes that the applicant has carried the burden of not needing park-

---

5. Petitioners do not specifically challenge any of the findings of fact relevant to the parking issue as being unsupported by substantial evidence in the record.

6. For example, statistics on the average number of available parking spaces in facilities within a two-block radius of the new YMCA revealed the following: (1) daytime—448; (2) evening until 9 p. m.—1,449; and (3) weekend —1,279. The same study disclosed that the maximum parking demand at any one time for staff, members, and guests would be 92 spaces.

7. The testimony of the staff planner for this office was:

   Recognizing the character, surrounding land uses, and irregular shape of the lot, the activities that the applicant [YMCA] seeks to provide, and the estimated transportation patterns of the applicant's clientele, it does not appear that the proposed use will adversely affect the public good, or impair the integrity of the zoning plan.

ing spaces on site, as demonstrated by the large number of spaces located in the immediate vicinity. The Board also concludes that there will be a large number of walk-in patrons particularly from the working population in the area.

Petitioners argue that the BZA "abused its discretion and was plainly erroneous in waiving all parking spaces contrary to overwhelming evidence and controlling case law." (Brief for Petitioners at 26.) We disagree.

■ Our duty on review is narrowly prescribed. *See* D.C.Code 1973, § 1–1510; *Dietrich v. District of Columbia Board of Zoning Adjustment*, D.C.App., 320 A.2d 282 (1974). We must "determine whether findings made 'are supported by and in accordance with reliable, probative, and substantial evidence in the whole administrative record, *Schiffmann v. ABC Board*, D.C. App., 302 A.2d 235 (1973), and whether the conclusions of the Board flow rationally from these findings, *Stewart v. BZA*, D.C. App., 305 A.2d 516 (1973).' *Marjorie Webster Junior College, Inc. v. BZA*, D.C.App., 309 A.2d 314, 319 (1973)." *Dietrich v. District of Columbia Board of Zoning Adjustment, supra* at 285.

■ To determine whether the BZA applied the correct legal standard to the YMCA's application, we must first decide whether the BZA erred in treating the application as one for an area variance, rather than a use variance. "The burden of proof is greater for a use variance than an area variance." *Palmer v. Board of Zoning Adjustment*, D.C.App., 287 A.2d 535, 541 (1972). In *Taylor v. District of Columbia Board of Zoning Adjustment*, D.C.App., 308 A.2d 230, 233 (1973), when this court found the requested variance (*not* from the off-street parking regulation) to be a hybrid,

"use-area variance," we applied the stricter burden of proof—*i. e.*, undue hardship. We view the BZA's characterization of the application as correct.

■ The distinction between a use variance and an area variance is that the former " 'permits a use other than that prescribed by the zoning ordinance' whereas an 'area variance has no relation to change of use. It is primarily a grant to erect, alter or use a structure for a permitted use in a manner other than that prescribed by the ordinance.' "[8] Since we have previously decided that the YMCA is a private club within the meaning of the applicable zoning regulation,[9] Zoning Regulation, art. 12, § 1202, and given that a private club is a permitted use in the relevant area here,[10] it is apparent that the YMCA is seeking to erect its proposed structure in a manner other than that prescribed by ordinance—*i. e.*, without providing the required number of off-street parking spaces. The principal rationale for the different standards applicable to the two variances is that an area variance does not affect the *use* of the land and does not threaten the neighborhood or adjacent landowners with the maintenance of an incompatible *use* of the subject property. 3 Anderson, American Law of Zoning § 14.45, at 3–4 (1968). The use of the property by the YMCA as a private club will be a compatible use.[11]

■ The YMCA had the burden of proof before the BZA to show that it was entitled to the requested area variance. *Taylor v. District of Columbia Board of Zoning Adjustment, supra* at 234. Where area variances are involved, we have construed the applicable statute[12] as requiring proof that compliance with the applicable zoning regulation would cause "peculiar

8. 2 Anderson, American Law of Zoning § 14.07 (1968), *quoting in part, Alumni Control Board v. Lincoln*, 179 Neb. 194, 137 N.W.2d 800, 802 (1965).

9. That issue was decided today by this court in another proceeding, see note 3 *supra*, and accompanying text.

10. No party to these proceedings has ever challenged that fact, nor could they, as this site is located in a Special Purpose district. *See* Zoning Regs., art. 41, §§ 4101.3, 4101.31; art. 31, §§ 3105.3–.31, 3104.3, 3104.39.

11. See notes 9 and 10 *supra*, and accompanying text.

12. D.C.Code 1973, § 5–420(3).

and exceptional practical difficulties" for the owner of the subject property. *Barbour v. District of Columbia Board of Zoning Adjustment*, D.C.App., 358 A.2d 326, 327 (1976). This standard of proof consists of two elements. The applicant must demonstrate that (1) "compliance with the area restriction would be unnecessarily burdensome . . .", *A.L.W. Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 338 A.2d 428, 431 (1975); and (2) the practical difficulties are unique to the particular property. *Barbour, supra* at 327.

Two factors are responsible for the peculiar practical difficulties of the YMCA at its proposed site. First, as the BZA found, the subject site is irregularly shaped. Second, the construction of the YMCA's proposed indoor pool as part of its private club facilities presents certain structural design problems.

■ Before turning to the evidence supporting the YMCA's peculiar practical difficulties, we examine petitioners' contention that the rule of self-created hardship applies here and should have been considered by the BZA. Petitioners state that whatever hardship faced the YMCA "was self-created to the extent of Metro YMCA having *full knowledge* of all problems with the alleged shape of the land, the type of zoning, and costs of putting in the parking, *prior* to the purchase of the property in March 1974." The YMCA's self-created hardship is not a factor to be considered in an application for an area variance, however, as that factor applies only to a use variance. *See Salsbery v. District of Columbia Board of Zoning Adjustment*, D.C. App., 357 A.2d 402, 404 (1976); *A.L.W., Inc. v. District of Columbia Board of Zoning Adjustment, supra* at 431.

■ There is no dispute that the lot is irregularly shaped. The BZA concluded on the basis of the lot's irregular shape that the YMCA had satisfied its burden of showing a practical difficulty, sufficient to support the grant of an area variance. We cannot say that the Board erred in so doing.[13]

The YMCA showed by expert testimony, supported by exhibits, that due to the irregular shape of the lot, which appears to be unique, the cost to provide the required off-street parking would be extraordinary. One approach to the problem would require cutting the swimming pool tank in half; even so, the cost of providing parking spaces under the tank would be prohibitive. Additionally, construction with parking would cause an inability to provide all of the YMCA's programs.

The YMCA also introduced evidence to demonstrate that there is available a combination of area parking spaces, bus and subway service; and that consequently off-street parking was not necessary in order to avoid frustrating the parking regulation. The Board credited this evidence.

We conclude the BZA findings are supported by substantial evidence; and that its conclusion that the YMCA be granted a parking variance flows rationally from those findings.

The order of the BZA is

*Affirmed.*

---

13. We are aware that our decision in *Barbour v. District of Columbia Board of Zoning Adjustment, supra,* affirmed the denial of an area variance where the primary evidence of practical difficulty was the financial burden of construction conforming with the zoning regulation. That case is, however, distinguishable. There the owner of the property had two alternative methods of construction which would have *fully* complied with the zoning regulation, whereas here the YMCA had no feasible alternative method which would have provided both the pool and *all* of the required parking spaces.