Miriam K. CARLINER, Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

Friendship Neighborhood Coalition, Advisory Neighborhood Commission, Intervenors.

No. 14187.

District of Columbia Court of Appeals.

Argued Dec. 5, 1979.

Decided March 7, 1980.

Robert A. Remes, Washington, D. C., for petitioner. David Carliner, Washington, D. C., also entered an appearance for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., for respondent. Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., also entered an appearance for respondent.

Joan Powers, Washington, D. C., with whom Arthur Z. Gardiner, Jr., and George A. Avery, Washington, D. C., were on the brief, for intervenors.

Before NEWMAN, Chief Judge, and KERN and MACK, Associate Judges.

PER CURIAM:

This is a petition for review of an order entered by the Board of Zoning Adjustment (Board) denying an application for an area variance. Petitioner sought the variance because both her property's total area and its frontage width are less than the minimum required for building a single-family dwelling in an R–1–B District, which she seeks to do.

The applicable statute, D.C.Code 1973, § 5–420(3), empowers the Board:

Where, by reason of . . . other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation

. . . would result in peculiar and exception practical difficulties to or exceptional and undue hardship upon the owner of such property, *to authorize . . . a variance from such strict application* so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map. [Emphasis added.]

■ Thus, the grant of an area variance is only appropriate where the Board concludes, based on the particular facts of the case, that three conditions exist: (1) the property is unique because of size, shape, topography or other extraordinary or exceptional situation or condition; (2) the owner is encountering exceptional practical difficulties as a result of the strict application of the zoning regulation to his particular property; (3) the variance would not cause substantial detriment to the public · good and would not substantially impair the intent, purpose and integrity of the zone plan. *See Capitol Hill Restoration Society, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 398 A.2d 13, 15 (1979). The Board in the instant case after extensive hearings refused to grant the variance. Upon review of the record we deem the conclusions of the Board in denying the application flow rationally from its findings and the evidence substantial enough to support the findings. *Stewart v. District of Columbia Board of Zoning Adjustment*, D.C.App., 305 A.2d 516, 518 (1973).

■ According to the findings, a sale contract covering a tract of three contiguous lots, 813, 814 and 32, was entered into between the estate of the long-time owner and occupier of this tract and a purchaser. The contract of sale was assigned to petitioner. At settlement, upon the instruction of petitioner, Lots 813 and 814 of this tract were conveyed to her and Lot 32 was conveyed to her daughter and son-in-law. Petitioner then contracted to sell her two lots to Vosney Construction Company (Vosney), which in turn planned to build a house and sell the two lots, thus improved. At the time of the Board's hearings, these two lots were improved by a two-car garage and concrete driveway, which were used by the present and past owners of the house on Lot 32. All of the parties were aware that the three lots had been occupied by a single owner and used as one tract of property until the petitioner purchased the tract and subdivided it. There was no representation that the two lots composing petitioner's property at the time she entered into her contract with Vosney were buildable. In order to enable Vosney to construct the two-story colonial house it proposed to build and then sell, petitioner was required to seek an area variance.[1]

The Board also found that the Chevy Chase Heights subdivision, where these lots are located, is characterized by unusually large lots and large older houses.[2] The Board found that:

. . . This property was purchased by the applicant as essentially one piece, it has always been used as a whole, and there is no evidence to suggest that the property was purchased in any way other than as a single house with a large side yard. The Board finds no practical difficulty upon the owner by strict application of the regulations. . . .

The Board concluded from its findings that:

Based on the record, the Board concludes that the three lots have been and now are being used as one property and are of a size common in the neighborhood. The owner-applicant *divided* the three lots, *leaving to herself the non-conforming subject property* improved by a ga-

---

1. The combined area of Lots 813 and 814 is approximately 20 percent less than the 5,000 square feet required in an R–1–B District, and their front width is two feet short of the required 50 foot minimum for the R–1–B District.

2. We note the Board's findings:

Lot 32 was created in a subdivision of lots made in August 1912. Lots 813 and 814 came into existence before 1920 as a result of the movement westward of an alley which originally abutted Lot 32.

rage. The fact that the undersized subject property would be worth more with a separate residence on it than it is now as a side yard and garage for the existing house is also not the type of practical difficulty which justifies an area variance. The Board concludes there is no practical difficulty upon the owner to continue use of the three lots as one living unit. . . .

The Board further concludes that the variances *cannot* be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan. Granting the variances would result in two non-conforming properties and would deprive the existing house of its garage and access to the alley and would result in the construction of a house smaller than most in the neighborhood on a lot smaller than most in the neighborhood. [Emphasis added.]

Petitioner attacks the Board's conclusion that she would suffer no exceptional practical difficulty from the strict application of the R–1–B zoning regulation to her property on the basis that her property was virtually useless as improved with a garage and driveway and unbuildable unless she were granted a variance. We note the Board's conclusion, however, that not until petitioner subdivided the tract consisting of the three lots she had purchased did the portion she retained for herself out of the original tract become substandard under the R–1–B zoning regulation applicable in this general area. We are unwilling to disturb the decision of the Board when it determines that the affirmative action of the applicant in making his property non-conforming, rather than his mere knowledge at the time of purchase that his property is non-conforming, warrants the application of the hard-

ship doctrine and thereby justifies denial of the variance.[3]

*Russell v. District of Columbia Board of Zoning Adjustment*, D.C.App., 402 A.2d 1231 (1979), cited to us by petitioner, is inapposite since the hardship doctrine was not discussed. There, the Board granted an area variance for an unimproved lot because the owner "would be unable to reasonably dispose of his property for a permitted use, or to develop the lot himself." *Id.* at 1236. Implicit in the Board's findings was a determination that the grant of the variance would *not* be to the substantial detriment of the public and would *not* substantially impair the R–1–B zoning plan. Here, the Board expressly concluded the grant of a variance would be substantially detrimental to the public and impair the integrity and intent of the zoning plan. In addition, the Board here found petitioner would be able reasonably to dispose of her property to the owner of Lot 32, whose predecessor in title was using the property in question as a garage before petitioner conveyed away Lot 32, leaving herself with a substandard tract in an R–1–B zone.

Petitioner also argues that the Board could not logically conclude upon this record that the variance, if granted, would result in "substantial detriment to the public good." Specifically, she points to the evidence that the proposed house would blend with the others in the neighborhood, would not decrease lighting or ventilation for other houses, would remove a "delapidated" garage on the property, and would add to the District's tax base.

The Board concluded, however, that the variance would create a substandard lot in an older neighborhood which, as matter of fact, was characterized by larger than usual tracts occupied by larger than usual houses.

**3.** This court has upheld the grant of a variance where the only "hardship" was petitioner's mere knowledge of the difficulties created by the zoning requirements. *De Azcarate v. D. C. Bd. of Zoning Adjustment*, D.C.App., 388 A.2d 1233 (1978); *Assoc. for Preservation of 1700 Block of N. St., N. W. and Vicinity v. D. C. Bd. of Zoning Adjustment*, D.C.App., 384 A.2d 674, 678 (1978). *Cf. A. L. W., Inc. v. D. C. Bd. of*

*Zoning Adjustment*, D.C.App., 338 A.2d 428, 431–32 (1975) (Board's denial of area variance reversed and remanded for explanation of its findings of facts and conclusions; "practical difficulty" is only *one* factor to be considered by the Board and owner's mere knowledge of area restriction is insufficient to invoke self-created hardship doctrine).

This determination by the Board, that a variance would permit building on a substandard lot out of character with the neighborhood, is sufficient to support its conclusion that the variance could not be granted without creating a substantial detriment to the public good.

 The Board rested its denial also on its determination to maintain "neighborhood stability," by which we deem it was recognizing the statutory mandate not to grant variances that would impair the intent and the integrity of the zoning plan.

A variance for an undersized lot in this particular R–1–B District would clearly impair the zoning plan. Accordingly, we cannot say in the instant case the Board's action was contrary to law.

*Affirmed.*[4]

4. Petitioner asserts that two procedural deficiencies invalidate the Board's order: (1) the Chairman's visit to the property in question without notice to the parties and in the absence of their counsel, and (2) the Board's failure to review after preparation and before issuance by its staff of the order of November 27 which memorialized its decision reached on September 6, 1978. As to the first contention, the record contains considerable evidence consisting of photographs, maps and testimony by a variety of witnesses which depict, in detail, the location, topography and layout of the property in question. Therefore, even assuming the Chairman's unannounced viewing of the site was error, it was harmless since the description of the property in the record was extensive, and was the subject of intensive argument before the Board.

As to the second contention, the record, as supplemented, contains an affidavit by the Board's Executive Director that the Board did ultimately review and approve the written decision issued on November 27. To remand this case to the Board for a further review and yet another affirmance of its written order would be a useless action which we decline to take.