**WASHINGTON CANOE CLUB,**
**et al., Petitioners,**

**v.**

**DISTRICT OF COLUMBIA ZONING**
**COMMISSION, Respondent,**

**and**

**President and Directors of Georgetown**
**College, Intervenor.**

**No. 04–AA–463.**

District of Columbia Court of Appeals.

Argued Sept. 7, 2005.

Decided Dec. 30, 2005.

Richard B. Nettler, Washington, DC, with whom Jeannine Rustad, was on the brief, for petitioners.

Deborah B. Baum, with whom Samantha L. Mazo, Washington, DC, was on the brief, for intervenor.

Robert J. Spagnoletti, Attorney General for the District of Columbia, Edward E. Schwab, Deputy Attorney General, and William J. Earl, Assistant Attorney General, filed a statement in lieu of brief for respondent.

Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Petitioners seek review of a December 11, 2003 Order (No. 02–30) of the District of Columbia Zoning Commission (the "Commission"). That order granted the directors of Georgetown College ("the University") and the National Park Service ("NPS"), (collectively, the "Applicants") a map amendment, special exceptions and variance relief for the purpose of building a boathouse; that structure to be located in the northwest quadrant of the city along the Potomac River shoreline for use by the University's crew team.[1] The petitioners contend that the Commission erred when it granted the Applicants' request for a special exception. In addition, the petitioners assert that the Commission misapplied the standards set forth in *Palmer v. District of Columbia Bd. of Zoning Adjustment,* 287 A.2d 535 (D.C.1972), when it granted area variances. We disagree and affirm.

**I.**

The Applicants submitted an application to the Commission for a map amendment from unzoned to W–1, the lowest density existing zone classification permitted for boathouse use. The Applicants also submitted a petition requesting several text amendments to the W–1 classification that would be required to allow development of the boathouse under this zoning classification.

The Office of Planning ("OP") in its report to the Commission suggested that the

[1]. The Property is currently owned by the United States Government and consists of a long, narrow parcel of undeveloped, waterfront land approximately 440 feet in length with a variable width of 94 to 127 feet. It is located approximately one-fourth of a mile west of the Key Bridge and is immediately adjacent to the existing boathouse of the Washington Canoe Club ("WCC"). The Capital Crescent Trail ("CCT"), a paved trail used by cyclists and pedestrians running from the Georgetown waterfront to Bethesda, Maryland, is immediately to the north of the Property. The southern boundary of the Property is the Potomac River shoreline. The Property is surrounded to the north by federal parklands, thus creating a natural, undeveloped environment. Upon obtaining the necessary zoning approvals, the NPS will deed the Property to the University in exchange for another parcel of land owned by the University located further up-river. The University will also transfer a mile-long vehicular access easement along the CCT.

Property be assigned an entirely new zoning category, the Waterfront Open Space Zone (W–0), the most restrictive available waterfront district zone, that required a 100–foot setback from the waterfront. The Commission adopted the new W–0 classification with the consent of the Applicants. As a result of the change in zoning classification, the Applicants were required to file a separate application for a special exception for boathouse use and a setback variance because of the Property's narrow configuration. The Applicants also sought to eliminate parking requirements because the Property would not require public access by motor vehicle.

The Commission provided public notice of the boathouse project and conducted three public hearings on the applications during the spring and summer of 2003; it compiled a record consisting of over 2000 pages of evidence. At a public meeting on July 31, 2003, the Commission took preliminary action to approve the application which would classify the Property as W–0; this, in turn, led to the ultimate issuance of the detailed and thorough order of December 11, 2003 approving the zoning classification, special exceptions and variances which would allow the Applicants to build the boathouse on the Property.

## II.

Although the petitioners recognize that a boathouse would be an appropriate use in a W–0 district provided that a special exception is granted, they assert that the construction of this particular boathouse on the Property would have an adverse impact on the adjacent property because of its size and design. The petitioners believe that the Commission did not adequately address the detrimental impact of the boathouse on the ability of the CCT's users to safely navigate the trail at its most congested point or consider the nega-

tive environmental damage to the WCC and the surrounding parklands.

When reviewing an order of the Commission, like decisions of other agencies, we give great deference to the agency's findings supporting the decision. We do not reassess the merits of the decision, but instead determine "whether the findings and conclusions were arbitrary, capricious or an abuse of discretion, or not supported by substantial evidence." *Dupont Circle Citizens Ass'n v. District of Columbia Zoning Comm'n,* 355 A.2d 550, 560 (D.C.), *cert. denied,* 429 U.S. 966, 97 S.Ct. 396, 50 L.Ed.2d 334 (1976). "Substantial evidence is relevant evidence which a reasonable trier of fact would find adequate to support a conclusion." *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment,* 831 A.2d 921, 931 (D.C.2003). We are not permitted to re-weigh that evidence or substitute our own judgment for that of the agency. *Dupont Circle Citizens Ass'n, supra,* 355 A.2d at 560–61. Likewise, we give the same consideration to a zoning regulatory agency order granting an area variance. *See Wolf v. District of Columbia Bd. of Zoning Adjustment,* 397 A.2d 936, 942 (D.C.1979).

The Board of Zoning Adjustment (the "Board") is authorized "to grant special exceptions, . . . where, in the judgment of the Board, the special exceptions will be in harmony with the general purpose and intent of the Zoning Regulations and Zoning Maps and will not tend to affect adversely, the use of neighboring property in accordance with the Zoning Regulations and Zoning Maps, subject in each case to [certain] special conditions . . . ."

11 DCMR § 3104.01 (2003). A boathouse qualifies as a special exception in a W–0 district provided that it satisfies certain criteria.[2] When evaluating whether these

2. Although their brief does not focus on the

following provisions of the zoning regulations

criteria are satisfied, the Commission is required "to determine whether a reasonable accommodation has been made between the [applicant and the surrounding properties] . . . ." *Glenbrook Rd. Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 32 (D.C.1992). However, "the applicant is not charged with considering every option that any party in opposition might conceptualize." *Don't Tear it Down, Inc. v. District of Columbia Dep't of Hous. & Cmty. Dev.,* 428 A.2d 369, 379 (D.C.1981). Nor is the Commission required to give greater weight to one party's views as opposed to another. *See Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n,* 402 A.2d 36, 47 (D.C.1979) (holding that "[t]he agency is not legally required to explain, in addition, why it favored one witness or statistic over another.").

■ Specifically, the petitioners contend that the width of the CCT will be reduced by 30% at its most congested point, all views of the Potomac River will be blocked from the CCT, and, during the winter months, the CCT will become icy at the point where it parallels the boathouse because all natural light to the trail will be blocked. Our review of the Commission's extensive record and its detailed decision and order reflects that the Commission examined the very issues that the petitioners believe were not considered. In its findings of fact, the Commission stated that "[t]he boathouse will have some impact on the Capital Crescent Trail in that it will result in the relocation, by a few feet, of a short trail section, but the width

of the trail will not be changed." Moreover, the boathouse "will have some impact on views of the water from the Trail, particularly in winter . . . however, [ ] the boathouse will animate a portion of the Trail, provide more users, and provide a 'point of interest' at the trailhead. . . . [as well as] complement the river-scape when seen from afar."

Although the Commission concluded that there was some minimal negative impact to the adjoining properties, and thus every issue that the petitioners raised was not completely mitigated to their satisfaction, the Commission· has met its obligations under the zoning laws and regulations with respect to these concerns. The Commission details in ten separate findings of fact that the structural design and utilization of the boathouse will provide for an attractive facility with adequate restrictions on vehicular traffic and noise, appropriate crowd control, and provisions for water safety on the river without significant adverse impact to neighboring properties. The Commission outlines in its findings various steps that will be taken to address environmental concerns. For example, the District of Columbia Environmental Regulatory Agency will require the implementation of soil erosion controls during construction of the boathouse and storm-water management devices to safeguard the environment. Further, the Commission found that the Army Corps of Engineers ("the Corps") determined that there were no wetland or habitats that would be disturbed by the construction of the boathouse. The Corps also provided design guidelines to promote stabilization

concerning the use of waterfront districts, the petitioners essentially argue that the Commission has not adequately addressed whether the boathouse: "(a) Will be designed to enhance the visual and recreation opportunities offered along the waterfront;" and "(c) Will be located so as not likely to become objectionable to surrounding and nearby property

because of noise, traffic or parking." 52 D.C.Reg. 6358, 6372 (2005) (to be codified at 11 DCMR § 921.2(a), (c)). It is noted that the petitioners do not challenge the Commission's grant of a special exception to eliminate the off-street parking requirements. *See* 52 D.C.Reg. at 6372 (to be codified at 11 DCMR § 921.5).

of the soil along the river and dock. The Commission noted that a detailed Environmental Impact Statement may be required under District of Columbia law but decided not to delay the consideration of the application while this study was conducted. While the petitioners do not agree with the Commission's decision with regards to several issues that are of importance to their constituents, we may not make an independent judgment on these issues, but must affirm the grant of the special exception for a boathouse because the Commission considered their viewpoints and supported its findings of fact and conclusions with substantial supporting evidence.

### III.

██ The petitioners contend that the Commission erred when it granted the area variances to the Applicants because: (1) the Property is not unique; (2) the normal application of the zoning regulations does not result in any practical difficulties for the use of the Property as a boathouse; and (3) the relief granted is not consistent with the zone plan. The standard for obtaining an area variance is well-settled law. In order to obtain variance relief, an applicant must show that (1) there is an extraordinary or exceptional condition affecting the property; (2) practical difficulties will occur if the zoning regulations are strictly enforced; and (3) the requested "relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan ...." *Palmer, supra,* 287 A.2d at 538. Despite the petitioners' disagreement with the Commission's decision, we hold that its findings of fact and conclusions were supported by substantial

evidence with respect to each of these elements and that the variances are not inconsistent with the zoning laws.

First, the petitioners argue that the Property is not unique and that all properties along the Potomac and Anacostia Rivers are affected by the narrowness of the land. To support their position, the petitioners assert that *Carliner v. District of Columbia Board of Zoning Adjustment,* 412 A.2d 52 (D.C.1980), dictates denial of the variance grant. Their reliance on this case is misapplied. Unlike the petitioner in *Carliner* whose actions of subdividing the property after purchase caused the need for a variance, the Applicants did nothing to alter the Property; instead, the need for the variance was inherent in the pre-existing condition of the land and the adjacent land improvements in the form of the CCT. So also is *Myrick v. District of Columbia Bd. of Zoning Adjustment,* 577 A.2d 757 (D.C.1990) of no relevance to this case, since an addition to a home in lieu of renovations there did not create exceptional practical difficulties sufficient to make the property unique. Here the characteristics of the property itself warranted the setback variance.

 The uniqueness of a property can arise from a variety of factors. *Gilmartin v. District of Columbia Bd. of Zoning Adjustment,* 579 A.2d 1164, 1168 (D.C.1990). "The critical point is that the extraordinary or exceptional condition must affect a single property." *Id.* The Commission found that a variance should be granted because the combination of the Property's shallowness, boundary on the Potomac River shoreline, and proximity to the CCT would make it impossible to build *any* structure without a relaxation of the 100–foot setback requirement[3] and/or a signifi-

---

**3.** "A setback inland from the bulkhead or the mean high water level, whichever provides the larger *setback,* of not less than one hundred feet (100 ft.) to any building or structure,

shall be provided." 51 D.C.Reg. 3440, 3463 (2004) (to be codified at 11 DCMR § 937.1). "A special exception may be granted in accordance with the criteria of §§ 924 and 3104,

cant disruption of the CCT. The variance was thus required only because the center of the boathouse bay did not conform to the waterfront setback of twenty feet. The Commission determined that after implementing various design changes suggested by the OP, the Applicants had reduced the height and size of the boathouse so that the setback for the majority of the structure ranged from forty-two to fifty-five feet while only the center bay was positioned fifteen feet from the river and the overhang from the observation porch extended eight feet closer. The Commission stated that these changes were sufficient because any further revisions to the design of the building to attempt to conform to the twenty-foot waterfront setback would impede the storage of boats near the area of their primary use.

Second, the petitioners claim that the practical difficulties posed by the Property for the Applicants were self-created with regards to the design of the boathouse and the construction of a permanent pier.[4] However, we have previously determined that the rule of self-created hardship does not apply to the grant of area variances such as the one requested by the Applicants. *See De Azcarate v. District of Columbia Bd. of Zoning Adjustment,* 388 A.2d 1233, 1238 (D.C.1978).

An applicant suffers from practical difficulties when "(1) compliance with the area restriction would be unnecessarily burdensome and (2) the practical difficulties are unique to the particular property." *Gilmartin, supra,* 579 A.2d at 1170 (internal citations and quotations omitted). We determine the nature and extent of the

burden on a case-by-case basis. *Id.* In considering whether to grant or deny a variance, various factors are relevant. They include: "1) the weight of the burden of strict compliance; 2) the severity of the variance(s) requested; and 3) the effect the proposed variance(s) would have on the overall zone plan." *Id.* at 1170–71. This case is similar to *Association for the Preservation of 1700 Block of N Street, N.W. & Vicinity v. District of Columbia Bd. of Zoning Adjustment,* 384 A.2d 674 (D.C. 1978), where we upheld the Board's decision to grant a variance from the prescribed parking requirement to allow the Young Men's Christian Association ("YMCA") to build a new recreational facility. The YMCA met its burden of demonstrating a practical difficulty by showing that the uniqueness of the irregular shaped lot resulted in an extraordinary cost to comply with the parking requirement. *Id.* at 678. Although the YMCA could provide the parking by reducing the size of its proposed facility and programming, the cost of providing the parking would still be prohibitive. *Id.* Thus, there was no feasible design plan that would have complied with the zoning requirements. We also determined that *1700 Block* was distinguishable from *Barbour v. District of Columbia Bd. of Zoning Adjustment,* 358 A.2d 326 (D.C.1976). 384 A.2d at 678 n. 13. The property owners in *Barbour* had two alternative design plans to build an addition to their home albeit more expensive than the design plan submitted to the Board that required an area variance. *Barbour, supra,* 358 A.2d at 327. As such, they were not precluded

---

for any proposed waterfront setback of greater than twenty (20) feet and less than one hundred (100) feet." 51 D.C.Reg. at 3463 (to be codified at 11 DCMR § 937.3).

**4.** We note that piers are not subject to the waterfront setback requirements. *See* 51

D.C.Reg. at 3463 (to be codified at 11 DCMR § 937.2) (providing that "[n]otwithstanding § 937.1, a waterfront setback need not be provided for a water taxi ticketing/information booth, or for structures directly associated with a public-accessible wharf, dock, or pier.").

from building the addition, although the alternative plans would be more costly. *Id.*; *see also Myrick, supra,* 577 A.2d at 761 (holding "that while renovating the existing space may indeed have been more costly and more difficult, that fact alone does not present the kind of 'exceptional practical difficulties' necessary to establish that the property is unique.") (internal citations omitted).

 Here, the Commission found that the extraordinary or exceptional conditions of the Property caused practical difficulties for the Applicants because the Applicants would be forced to re-design the boathouse, a plan that was completed before the new W–0 classification was proposed, in order to meet the 100–foot setback requirement. The 100–foot setback was not required under the W–1 zoning classification originally requested by the Applicants. Accordingly, the Commission concluded that a re-design of the boathouse would negatively affect its internal functionality, appearance and stylistic consistency with other neighboring structures as well as CCT users if it had to comply with the setback requirements of the most restrictive waterfront zone district.[5]

Petitioner argues that "[n]o effort was made by the [Applicants] . . . to show that other property along the [Potomac and Anacostia] waterfronts [was] not similarly impacted by the narrowness of the land"

and the other characteristics allegedly making the Property unique. The implication is that granting a variance here will entitle any other owner of property along these waterfronts to obtain identical setback relief. The Commission's ruling, however, rested on a confluence of factors unique to this property, and not to other hypothetical properties for which similar relief may be requested in the future. These factors included the special dimensions of the Property—a shallow depth of 94 to 127 feet, with the CCT paralleling the water's edge at a distance of only 130 feet—but also, as we have explained, the fact that a novel zoning classification for waterfront properties was being applied for the first time to these Applicants, whose proposal would not have required a variance under the existing scheme. This is not, as petitioner urges, a case of unusual circumstances "related to the property only in the sense that the owner's personal situation makes it more difficult to develop the land consistently with the zoning regulations." *Draude v. Bd. of Zoning Adjustment,* 527 A.2d 1242, 1255 (D.C.1987). The Commission itself, on the advice of the OP, was adopting new restrictions on the development of waterfront property, and the fact that the Applicants' plan predated the W–0 zoning category and required a variance only by virtue of it was a factor the Commission could properly take into

---

5. The petitioners also argue that a document titled Memorandum of Agreement ("MOA") executed by the C & O Canal National Historic Park, NPS, District of Columbia State Historic Preservation Office and Advisory Council on Historic Preservation limits the size of the boathouse to 15,000 square feet and its height to not more than forty feet above grade. Similar language is also contained in a document titled Preliminary Agreement to Exchange Real Property executed by the United States Government and the University. The MOA states that the University must obtain zoning and other approvals that are required for the development and use of the property as well as the NPS' approval of the design. The MOA further provides a mechanism for resolution of disputes between the parties who executed the document. The petitioners are not parties to either of these documents. Accordingly, they lack standing to assert that the plan for the boathouse, as approved by the Commission, does not conform to the terms of the MOA. *See Marranzano v. Riggs Nat'l Bank of Washington D.C.,* 87 U.S.App. D.C. 195, 196, 184 F.2d 349, 350 (1950) (holding that a stranger to a contract cannot sue to enforce its terms or to recover damages for a violation thereof).

account. Whether these same considerations would govern future requests for relief by other property owners is something we do not decide.

 Lastly, the petitioners aver that the grant of the area variance impairs the integrity of the zone plan. The W–0 zone was created by the Commission to provide the most restrictive use of waterfront zones and to minimize the negative impacts of high-intensity development along the Potomac and Anacostia Rivers. The W–0 zone was implemented to "provide waterfront recreation areas with related waterfront-oriented or waterfront-enhancing uses, to serve local and regional open space recreation needs." 51 D.C.Reg. at 3450 (to be codified at 11 DCMR § 900.6). The Commission specifically determined that the boathouse would not cause substantial detriment to the public good, nor would the variance substantially impair the intent, purpose or integrity of the zone plan. It found that the boathouse would create additional recreational opportunities and provide public access along the Potomac riverfront. Again, we decide that the Commission's decision is supported by substantial evidence. Therefore, the Commission's conclusion that the Applicants be granted an area variance is rational based on its findings.

The order of the Commission is

*Affirmed.*