# District of Columbia
# Court of Appeals

No. 14-AA-1109

METROPOLE CONDOMINIUM ASSOCIATION, *et al.*,
Petitioners,



FILED
JUN 30 2016
DISTRICT OF COLUMBIA
COURT OF APPEALS

v.

BZA-18638

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT,
Respondent,

On Petition for Review of an Order
of the District of Columbia Office of Administrative Hearings

BEFORE: WASHINGTON, *Chief Judge*; MCLEESE, *Associate Judge;* and NEWMAN, *Senior Judge.*

## J U D G M E N T

This case came to be heard on the administrative record, a certified copy of the agency hearing transcript and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the decision of the Board of Zoning Adjustment is reversed, and the case is remanded for further proceedings.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: June 30, 2016.

Opinion by Chief Judge Eric T. Washington.

Concurring opinion by Senior Judge Theodore R. Newman.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

FILED  6/30/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

No. 14-AA-1109

METROPOLE CONDOMINIUM ASSOCIATION, ET AL., PETITIONERS,

V.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, RESPONDENT.

Petition for Review of a Decision of the
District of Columbia Board of Zoning Adjustment
(BZA-18638)

(Argued November 10, 2015                    Decided June 30, 2016)

*David W. Brown* for petitioners Metropole Condominium Association, *et al*.

*James C. McKay, Jr.*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for respondent District of Columbia Board of Zoning Adjustment.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and NEWMAN, *Senior Judge*.

Opinion for the court by *Chief Judge* WASHINGTON.

Concurring opinion by *Senior Judge* NEWMAN at page 20.

WASHINGTON, *Chief Judge*:  Petitioners seek review of an order of the

Board of Zoning Adjustment ("BZA" or the "Board") granting an application for a

variance and a special exception to allow for the construction of an eight-story

residential apartment building with thirty-seven dwelling units next door to their condominium. We agree with petitioners that the BZA failed to make necessary findings of fact and failed to adequately grapple with difficult questions presented by conflicting evidence in the record. Consequently, we remand this matter to the BZA for further findings and consideration consistent with this opinion.

## I. Factual Background

On July 24, 2013, Gregg Busch and Rosebusch, LLC (the "Applicant") applied to the Board for variance and special exception relief to construct an eight-story residential apartment building with thirty-seven dwelling units on Church Street, Northwest. The property on which the applicant desires to build the apartments consists of three lots, each currently containing a three-story brick rowhouse that fronts Church Street. Church Street is fifty feet wide. The property is zoned in the ARTS/C-3-A Overlay and is located within the 14th Street Historic District. The block on which the rowhouses are located has been almost entirely redeveloped and these lots are among the last to be improved. The applicant requested a special exception from roof structure height requirements and a variance from off-street parking requirements. Specifically, the applicant requested a parking variance from 11 DCMR § 2101.1, which requires one parking

space to be provided for every two units. In this case, the regulation required nineteen parking spaces for the applicant's project.

The property is bordered on the east by a seven-story apartment building and on the west by the Metropole Condominium, another seven-story building that steps down to four stories immediately adjacent to the applicant's site on Church Street. The BZA granted petitioners, members of the Metropole Condominium Association, party status in opposition to the application because they claimed that the application will have an adverse effect on the light, air, and enjoyment of their property. The Metropole also challenged the development based on impacts to parking on surrounding streets. The Advisory Neighborhood Commission ("ANC") 2F and the Office of Planning ("OP") issued reports endorsing the applicant's variance and special exception relief requests.

On October 22, 2013, the Board scheduled a public hearing on the application but continued the hearing because a board member, National Capital Planning Commissioner Jeff Hinkle, recused himself. On January 7, 2014, the Board held the evidentiary hearing. On April 8, 2014, the Board voted 2-1-2, with two members in favor of the variance, one against, and two members not participating. The Board postponed the meeting until April 15, 2014, to allow an

absent board member to vote. On April 11, 2014, the applicant filed a Motion to Reopen the record and hold a limited hearing on the parking variance. The Board granted the motion. On April 15, 2014, the Board held its second vote and the absent member voted in the negative for the parking variance, resulting in a 2-2 vote, which the Board stated was "no decision."[1] It therefore requested that the National Capital Planning Commission ("NCPC") assign another representative to review the matter and vote in the place of the recused member. On May 20, 2014, the Board held a limited rehearing on the applicant's motion to reopen, which Commissioner Shane L. Dettman from the NCPC attended as a replacement for the recused member. On June 17, 2014, the Board, including Commissioner Dettman, voted to approve the variance by a vote of 3-2.[2]

On September 3, 2014, the Board issued its written decision granting the application. Petitioners timely petitioned for review of the BZA's decision concerning the parking variance and special exception relief. In addition to substantive concerns raised regarding the lack of support in the record for the

---

[1] The Board voted 3-0-2 for the special exception, with two members in favor, none opposed, and two members not participating.

[2] None of the BZA members from the previous vote on April 15, 2014 changed their minds. Commissioner Dettman voted in the affirmative, which granted the variance.

BZA's findings of fact and conclusions of law, petitioners also argue that the replacement NCPC Commissioner was not properly appointed to the Board.

## II. Standard of Review

When reviewing agency action, we must "consider whether the findings made by the [agency] are sufficiently detailed and comprehensive to permit meaningful judicial review of its decision." *Draude v. District of Columbia Bd. of Zoning Adjustment*, 582 A.2d 949, 953 (D.C. 1990). "We will not reverse [the BZA's decision] unless its findings and conclusions are '[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;' in excess of its jurisdiction or authority; or '[u]nsupported by substantial evidence in the record of the proceedings before the Court.'" *Economides v. District of Columbia Bd. of Zoning Adjustment*, 954 A.2d 427, 433 (D.C. 2008) (quoting D.C. Code § 2–510(a)(3) (2012 Repl.)). "An agency's interpretation of the regulations that govern it must be accorded great weight, and must be upheld unless it is plainly erroneous or inconsistent with the regulations." *Oakland Condo. v. District of Columbia Bd. of Zoning Adjustment*, 22 A.3d 748, 752 (D.C. 2011).

### III.   Analysis

As this court recently held, "verbatim adoption of orders proposed by one of the parties . . . will trigger more careful appellate scrutiny and result in less deference to the ruling of the . . . administrative agency." *Durant v. District of Columbia Zoning Comm'n*, 99 A.3d 253, 257-58 (D.C. 2014) (citation omitted). This case illustrates the problem of adopting verbatim one party's proposed findings of fact and conclusions of law.  The Board's order largely mirrors the applicant's proposed findings and conclusions with only a few minor typographical changes.  As we stated in *Durant*, agencies are to approach a party's proposed order "with the sharp eye of a skeptic and the sharp pencil of an editor."  *Id.* at 258-59 (quoting *Massman Constr. Co. v. Missouri Highway Transp. Comm'n*, 914 S.W.2d 801, 804 (Mo. 1996)).  Instead, it appears that the BZA engaged in a practice of "you won, now tell me why."  *Id.* at 263 (Newman, J., concurring). While ordinarily the verbatim adoption of the prevailing party's proposed order will not necessarily lead to reversal, the proposed order in this case, on its face, fails to consider relevant evidence and fails to adequately explain its findings. For that reason, we cannot exercise our ordinary standard of review of providing great deference to the factfinder and must remand the matter to the BZA for further

explanation and clarification.[3]   We address the issues, specifically concerning the variance and special exception, in turn.

## A. Variance for Parking

The BZA is authorized to grant an area variance where it finds that three circumstances exist: "(1) there is an extraordinary or exceptional condition affecting the property; (2) practical difficulties will occur if the zoning regulations are strictly enforced; and (3) the requested '[variance] can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan.'"  *Washington Canoe Club v. District of Columbia Zoning Comm'n*, 889 A.2d 995, 1000 (D.C. 2005) (quoting *Palmer v. District of Columbia Bd. of Zoning Adjustment*, 287 A.2d 535, 538 (D.C. 1972)).   The burden of proof is on the applicant.   *See id.*

The extraordinary or exceptional conditions affecting a property can arise from a confluence of factors; however, the critical requirement is that the

---

[3] While we understand that the BZA issued its order before the *Durant* decision, *Durant* relied upon a myriad of decisions, both from this court and from other jurisdictions around the country that all preceded the BZA decision here.   In this regard, the BZA was on plain and clear notice that it is required to explain its findings of fact and conclusions of law.

extraordinary or exceptional condition must affect a single property. *Gilmartin v. District of Columbia Bd. of Zoning Adjustment*, 579 A.2d 1164, 1168 (D.C. 1990). However, recognizing that a confluence of conditions can warrant a finding of an extraordinary or exceptional condition affecting a piece of property, we have on occasion deferred to the BZA's determination that a property was affected by extraordinary conditions even in the absence of a showing that no other property was affected by the same condition or conditions. *See, e.g.*, *Downtown Cluster of Congregations v. District of Columbia Bd. of Zoning Adjustment*, 675 A.2d 484, 491 (D.C. 1996); *Draude*, 582 A.2d 949, 962-63 (D.C. 1990); *Association for Pres. v. District of Columbia Bd. of Zoning Adjustment*, 384 A.2d 674, 677-78 (D.C. 1978).

The BZA found that the property was affected by a confluence of exceptional and extraordinary conditions, including: (1) the property was already improved with existing historic buildings, which have been deemed to contribute to the character of the 16th Street Historic District; (2) the Historic Preservation Review Board ("HPRB") required the applicant to incorporate significant portions of the historic structures into the design of the new building, thereby limiting the location of the elevators and egress stairs as well as the layout of the units; (3) the property is exceptionally narrow and significantly smaller in size in comparison to

other multi-family redevelopments within Square 209 and the surrounding community; and (4) the property fronts one of the narrowest streets in the neighborhood. We generally defer to the Board's findings when the Board not only makes findings of fact but explains why, based on those facts, the extraordinary condition of the property requires the requested relief. In this case, however, the Board offers the above findings as support for concluding that extraordinary conditions exist on the property to warrant a variance, but does not explain why those findings merit such a departure from the zoning regulations given that there are several properties in the area that are impacted by the same conditions. Nor does the Board explain why the incorporation of the historic structures on the property, the placement of elevators and egress stairs, and/or the layout of the particular proposed development are critical to determining whether the conditions on the property are extraordinary. Likewise, the BZA does not explain whether the fact that other multi-family development projects in the area have been built on properties that are not as narrow or small as the property in this case has any bearing on whether the property's conditions are truly extraordinary or exceptional. The BZA's findings seem to focus more on the applicant's intended use of the property rather than the condition of the property itself to justify the conclusion that there are extraordinary conditions that affect this property such that the applicant should be relieved from the general zoning

restrictions applicable to the other properties in the area. If that is a consideration, it seems to run counter to our cases that hold that the proposed use of a property is not a sufficient basis for determining the presence of exceptional conditions. In *Palmer*, the property at issue was burdened with many of the same conditions as the surrounding properties but the BZA nonetheless found that those conditions were enough to justify a variance to build a public hall. *Palmer*, 287 A.2d at 540. On appeal, we rejected the BZA's decision to grant the owner a variance concluding that "[t]he only aspect about the location in question that [was] unique [was the applicant's] desire to utilize it as a public hall" and "[s]uch a consideration cannot support a variance." *Id.* Thus, we reversed, concluding that no extraordinary or exceptional condition existed with respect to the property. *Id.* We reiterated in *Capitol Hill Restoration Soc., Inc. v. District of Columbia Bd. of Zoning Adjustment*, 398 A.2d 13, 16 (D.C. 1979), that "the use or prior use of a particular property . . . is inapplicable to the first condition that the property itself" have an extraordinary or exceptional situation or condition. If the Board's finding is that incorporating the historic structures on the property makes it impossible to comply with the parking requirements, the Board should explain why those historic structures are an extraordinary condition on the property that merits the granting of a variance for the parking requirement.

On remand, the BZA should consider all of the evidence in the record and provide this court with its findings and its rationale for concluding that there are extraordinary conditions affecting this particular property not based solely or largely on the applicant's intended use. The BZA must explain how these factors support the grant of a variance for the applicant. Only then can we meaningfully review and give appropriate deference to the BZA's findings of fact with respect to this prong of the variance test.

With respect to the second prong of the variance test, the BZA found that the applicant will face practical difficulties with conforming to the Zoning Regulations concerning parking space requirements because the property will not allow for excavation of the site for an underground garage, and because of the financial hardships the applicant will face if required to comply with the parking space requirements. While it is undisputed that the narrowness of the property will not allow for excavation for an underground parking garage, an eight-unit apartment building could be built without a variance because the property will allow for four parking spaces. Thus, "[t]he applicant must demonstrate that . . . compliance with the area restriction would be unnecessarily burdensome . . . ." *Fleischman v. District of Columbia Bd. of Zoning Adjustment*, 27 A.3d 554, 561-62 (D.C. 2011). The BZA makes no findings concerning this issue, and must address it on remand.

Furthermore, the only evidence in the record concerning the impracticality of an eight-unit apartment building is testimony from a real-estate agent that a building with eight units would be more difficult to sell because the unit sizes will increase and thus buyers will expect more amenities, such as a parking space, with larger units. It is unclear whether this testimony is substantial evidence to prove practical difficulty. "Substantial evidence is more than a mere scintilla." *Children's Defense Fund v. District of Columbia Dep't of Emp't Servs.*, 726 A.2d 1242, 1247 (D.C. 1999) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* While we do not judge the factual evidence, we are unsure whether the real-estate agent's testimony concerning whether large apartment units will sell without amenities is enough to support the idea that an eight-unit apartment building will cause practical difficulties for the applicant. If it is, the BZA must explain its reasoning with specificity during remand.

Despite our concerns about the justification provided by the BZA in support of the first two prongs of the variance test, we are satisfied that there is substantial evidence in the record to support the BZA's finding that granting the parking variance would not be detrimental to the public good or the zone plan. It can

hardly be disputed that the District has made it a priority to encourage the use of alternative transportation and discourage the use of privately owned vehicles in and around the District due to a lack of street parking in the city. Therefore, any practice that discourages the use of private vehicles in the District of Columbia and encourages the use of alternative methods of transportation can reasonably be viewed as providing substantial benefits, as opposed to causing substantial detriments, to the public good. There is substantial evidence in the record that the rental agreements for the applicant's apartments will support, rather than impair, the intent, purpose, and integrity of the zoning plan for the Arts Overlay District by restricting future residents of the proposed apartment building from applying for and obtaining residential parking permits that would add to the parking congestion in the area. For that reason, the D.C. Department of Transportation found that the application would have no adverse impacts on the travel conditions of the District's transportation network and collaborated with the applicant to mitigate any modest increase in travel in the area. Thus, we will not disturb the BZA's finding, which is supported by the evidence.

### B. Special Exception

The BZA has the power to hear and decide on requests for special

exceptions. D.C. Code § 6-641.07 (g)(2) (2012 Repl.). Before granting special exceptions, the Board must find that the special exceptions will be in harmony with the general purpose and intent of the Zoning Regulations and Zoning Maps and will not tend to adversely affect the use of neighboring property in accordance with the zoning regulations. 11 DCMR § 3104.1. The property at issue is in the ARTS/C-3-A Overlay, and the applicant is subject to the ARTS requirements for special exceptions. *See* 11 DCMR § 1906.

11 DCMR § 770.6 (d) (2015) provides that an elevator penthouse on the roof of a building can be, at most, 18 feet 6 inches tall in the C-3-A district. The applicant's proposed roof structure is only 14 feet 3 inches, rendering it well within the regulatory requirements. Yet, the BZA's order characterizes the special exception as being for the roof structure because it is "nine inches taller than what is permitted." The BZA erroneously characterizes the special exception as being one for roof structure height when it is the overall height of the building that violates the regulations.[4] While the order cites to § 1902.1 (a), which concerns the height of the overall structure, not the height of the roof structure alone, the

---

[4] The applicant's building was projected to be seventy feet and the roof structure was to be 14 feet 3 inches, for a total building height of 84 feet 3 inches, which is nine inches past the allowable height in the ARTS Overlay. *See* 11 DCMR § 1902.1 (a) (allowing a maximum 83 ½ feet above the measuring point used for the building).

BZA's decision to grant the special exception analyzes the impact of the *roof structure* on the neighboring properties, rather than the impact the overall height of the structure will have on the property's neighbors, including petitioners. The mischaracterization of the special exception relief prevented the BZA from meaningful review of the impact on petitioners, which precludes meaningful review on appeal. This inadequacy is precisely the problem that arises when an agency simply adopts a party's proposed order without considerable review of that proposal. We remand to the BZA to make proper findings concerning the building height of the property and its impact on the surrounding area pursuant to 11 DCMR § 3104.1.

Petitioner further argues that the BZA erred in granting the special exception by stating that the applicant "availed itself of the bonus density and height designed to encourage affordable housing," because there is no bonus height for inclusionary zoning in the C-3-A zone pursuant to 11 DCMR § 2604.2. Petitioners argue that the maximum bonus density that can be achieved in the C-3-A zone cannot be achieved by additional height, but rather by increasing the lot occupancy. Further, the regulations suggest that bonus density is not a matter of right as it is subject to "all other zoning requirements." 11 DCMR § 2604.1. The BZA counters that its misstatement that the applicant availed itself of

additional height is of no moment because the applicant is nonetheless entitled to a property of 70 feet pursuant to the Height Act. Although it is possible that the court could ultimately agree with the BZA's argument now on appeal, we remand this matter to the BZA to address this issue in the first instance and accurately explain its findings and rationale for granting the special exception.

Likewise, petitioners argue that the BZA improperly interpreted the zoning regulations concerning bonus floor area ratio ("FAR") to which the applicant was entitled. Specifically, 11 DCMR § 1909.1 (c)(1) states that in the ARTS/C-3-A Overlay District, "[t]he floor area ratio shall not exceed 4.8 FAR." However, the BZA interpreted another provision, 11 DCMR § 1904.3, which states: "A building that includes 3.0 or more FAR devoted to residential use is entitled to a bonus of 0.5 FAR" to mean that the applicant was entitled to a maximum bonus FAR of 5.3, the sum of 4.8 and the bonus 0.5. The petitioners argue that a reading of § 1904.3 requires reading the regulation as a whole to provide bonus FAR only when the project is devoted to a preferred use. Those preferred uses are outlined in the beginning of § 1904.2, to include, *inter alia*, theaters, department stores, and drugstores. The petitioners therefore argue that § 1904.3, while it mentions residential use, only applies to properties that include one of the preferred uses. However, "[w]e will defer to an agency's reasonable interpretation 'even if a

petitioner advances another reasonable interpretation . . . or if we might have been persuaded by the alternate interpretation had we been construing the [regulation] in the first instance.'" *District of Columbia Office of Human Rights v. District of Columbia Dept. of Corr.*, 40 A.3d 917, 926 (D.C. 2012) (quoting *Smith v. District of Columbia Dep't of Emp't Servs.*, 548 A.2d 95, 97 (D.C. 1988)). The BZA argues on appeal that it interprets the statute differently than the petitioners. We would ordinarily give deference to the Board's interpretation, however, it made conclusory statements in its findings of fact concerning the issue of bonus density, which precludes meaningful review of how it arrived at its conclusion that the applicant was entitled to an additional 0.5 FAR. On remand, the BZA should explain how it found that the applicant was entitled to bonus density.

## C. ANC and OP Recommendation

We briefly address petitioners' remaining claim on appeal. Petitioners argue that the BZA improperly gave "great weight" to the OP and ANC. Because D.C. Code § 6-623.04 (2012 Repl.) requires that the BZA give "great weight to the recommendation of the Office of Planning," the BZA properly considered the recommendation of the OP in reaching its decision. As for the recommendation of the ANC supporting the application, we note that the statute does not require the

BZA to give "great weight" to the ANC's recommendation but requires the BZA to give great weight to any issues and concerns raised by the ANC in reaching its decision. *See* D.C. Code 1-309.10 (d)(3)(A) (2012 Repl.). We have interpreted the requirement to mean that the BZA must acknowledge those concerns and articulate reasons why those concerns and issues were rejected and the relief requested from the zoning regulations was granted. *See Kopff v. District of Columbia Alcoholic Beverage Control Bd.*, 381 A.2d 1372, 1384 (D.C. 1977) ("We conclude that 'great weight' . . . means . . . that an agency must elaborate, with precision, its response to the ANC issues and concerns."); *see also Levy v. District of Columbia Bd. of Zoning Adjustment*, 570 A.2d 739, 746 (D.C. 1990) ("[T]he [Board] is required . . . to give issues and concerns raised by the ANC 'great weight' [through] 'the written rationale for the government decision taken.'"). While it may be helpful to an applicant seeking a variance or a special exception to have the support of the local ANC, that body's recommendation in favor of a project does not provide any substantial support to justify the BZA's decision.

## IV.   Conclusion

In summary, we hold that the BZA's findings and conclusions are inadequate for review because it adopted, verbatim, the applicant's proposed findings and conclusions.   After review of the BZA's order, it is apparent that the BZA failed to consider all of the evidence in the record. We, therefore, reverse the BZA's decision and remand the case for further proceedings.   "[S]uch remand is not solely for the purpose of redrafting findings and conclusions to facilitate our review and reinforce the Board's decision.   The Board may . . . conduct further hearings or . . . even reach a different result." *Washington Ethical Soc. v. District of Columbia Bd. of Zoning Adjustment*, 421 A.2d 14, 19 (D.C. 1980) (quoting *Salsbery v. District of Columbia Bd. of Zoning Adjustment*, 318 A.2d 894, 898 (D.C. 1974)).[5]

*So ordered.*

---

[5] Petitioners claim that one of the Board's members was not entitled to participate because he was not properly appointed by the NCPC.   The Board argues that appointment was not required and, in any event, petitioners are not entitled to relief on this ground.   Because we are vacating and remanding on other grounds, we need not address this issue at this time.   If the issue is properly raised on remand, the Board should address it in detail to permit this court to review its reasoning in the event of a subsequent petition raising the issue.

NEWMAN, *Senior Judge*, concurring: While I join the opinion of the court, I write separately to make explicit what the court's opinion strongly suggests. On remand, the BZA should first hear from all interested entities on how to proceed. This may result in a determination that taking further evidence to deal with the deficiencies in the prior determination pointed out in the court's opinion is necessary. In addition, the BZA should receive written and/or oral presentations and arguments by the parties. It then should properly determine the matter and itself prepare a proper written decision. It is in the spirit of hope that I note that the BZA's decision in this case which we vacate was issued on September 3, 2014, eight days prior to our decision in *Durant v. District of Columbia Zoning Comm'n*, 99 A.3d 253 (D.C. 2014). It is in that spirit of hope that I look forward to the BZA fully taking heed of the teachings of that decision (as well as the prior decisions it cites) and doing a proper adjudication on remand.