*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-AA-1146

JAMES FOURNIER, et al., PETITIONERS,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION, RESPONDENT,

and

JAIR LYNCH DEVELOPMENT PARTNERS, INTERVENOR.

Petition for Review of an Order of the
District of Columbia Zoning Commission
(ZC Case No. 13-14A)

(Argued November 4, 2020                    Decided February 4, 2021)

Chris Otten, with whom Daniel Wolkoff, James Fournier, Linwood Norman, Jerome Peloquin, Melissa Peffers, and Cynthia Carson were on the brief, pro se.

*Philip T. Evans*, with whom *Cynthia A. Gierhart* was on the brief, for intervenor.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*:  This case arises from a proposed planned unit development (PUD) at the McMillan Reservoir and Filtration Complex.  The case involves Parcel 2, one of seven parcels on the site.  In 2013, intervenor Jair Lynch Development Partners and affiliated entities ("the developers") sought approval to construct a residential/retail building on the parcel.  The Zoning Commission gave first-stage PUD approval to that specific project, and this court affirmed.  *Vision McMillan Partners, LLC*, ZC No. 13-14(6), slip op. at 13, 85, 95-96 (D.C. Zoning Comm'n Sept. 14, 2019); *Friends of McMillan Park v. District of Columbia Zoning Comm'n*, 211 A.3d 139, 142 (D.C. 2019).  In the order currently at issue, the Commission gave second-stage PUD approval to the project.  Petitioners ("the opponents") argue that the Commission (1) did not conduct an adequately detailed review before granting second-stage approval and (2) impermissibly permitted the developers to cluster affordable-housing units in the building.  We affirm.

## I.

Although the zoning regulations were amended in 2016, the Commission in this case applied the pre-2016 PUD regulations to this application, which was filed before the amendments.  The parties do not appear to object to that approach, and

we therefore also apply the earlier regulations. Those regulations describe both stages of PUD approval:

> The first stage involves a general review of the site's suitability for use as a PUD; the appropriateness, character, scale, mixture of uses, and design of the uses proposed; and the compatibility of the proposed development with city-wide, ward, and area plans of the District of Columbia, and the other goals of the PUD process[. ]The second stage is a detailed site plan review to determine compliance with the intent and purposes of the PUD process, the first stage approval, and this title.

11 DCMR § 2402.2 (2015). "If the Commission finds the [second-stage] application to be in accordance with the intent and purpose of the Zoning Regulations, the PUD process, and the first-stage approval, the Commission shall grant approval to the second-stage application . . . ." 11 DCMR § 2408.6 (2015).

In the second-stage application, the developers proposed several changes from the building as designed in the first-stage application, including a decrease in the total number of units and total square footage in the building and an increase in the number of affordable-housing units in the building.

**II.**

We will affirm the "Commission's order approving the proposed PUD so long as (1) the Commission has made findings of fact on each material contested issue; (2) there is substantial evidence in the record to support each finding; and (3) the Commission's conclusions of law follow rationally from those findings." *Friends of McMillan Park*, 211 A.3d at 143 (brackets and internal quotation marks omitted). "Because the Commission is an expert body, we generally defer to the Commission's interpretation of the zoning regulations. We will not, however, uphold interpretations that are plainly erroneous or inconsistent with the regulations." *Id.* (citation and internal quotation marks omitted).

Parties challenging agency action generally must raise their claims first before the agency, because "consideration of a claim raised for the first time on [petition for review] deprives the administrative agency of its right to consider the matter, make a ruling, and state the reasons for its action." *Hill v. District of Columbia Dep't of Emp't Servs.*, 717 A.2d 909, 912 (D.C. 1998). Thus, "[i]n the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time." *Bostic v.*

*District of Columbia Hous. Auth.*, 162 A.3d 170, 176 (D.C. 2017) (internal quotation marks omitted).

## III.

In this court, the objectors raise numerous concerns about the impact of the proposed building, including concerns about traffic, provision of emergency services, noise, and the environment. Many of those arguments, however, were raised and decided during the proceedings involving the first-stage approval. For example, the objectors contend that the building will negatively affect air quality and noise. In reviewing the first-stage approval, this court held that the Commission's conclusions as to the building's environmental impact were "reasonable and based on substantial evidence." *Friends of McMillan Park*, 211 A.3d at 151. The Commission concluded that it was not required to reconsider such matters when ruling on the request for second-stage approval. We agree.

"[T]he efficient disposition of [a] case demands that each stage of the litigation build on the last, and not afford an opportunity to reargue every previous ruling." *Williams v. Vel Rey Props., Inc.*, 699 A.2d 416, 420 n.7 (D.C. 1997) (internal quotation marks omitted). For that reason, agencies generally are not

required to reconsider prior decisions in later proceedings, particularly when those decisions have been upheld on judicial review. *See, e.g.*, *District of Columbia v. District of Columbia Pub. Serv. Comm'n*, 963 A.2d 1144, 1151-52 (D.C. 2009) (agency has discretion to decline review of petition for reconsideration). More specifically, this court has already approved the Commission's refusal in a second-stage PUD proceeding to reconsider a determination made in a first-stage proceeding. *Randolph v. District of Columbia Zoning Comm'n*, 83 A.3d 756, 758, 761-62 (D.C. 2014). We reach the same conclusion in the present case.

We recognize that the regulations describe second-stage review as "a detailed site plan review to determine compliance with the intent and purposes of the PUD process, the first stage approval, and this title." 11 DCMR § 2402.2. We conclude, however, that the Commission acted reasonably in declining to interpret this regulation to require a de novo consideration in second-stage proceedings of the overall benefits and disadvantages of a project. When ruling on a second-stage application, the Commission thus can ordinarily refuse to reconsider arguments that the Commission has already decided in granting first-stage approval. Similarly, the Commission generally can decline to address arguments that could have been made in first-stage proceedings but were not raised at that point. *Levy v. District of Columbia Rental Hous. Comm'n*, 126 A.3d 684, 691 (D.C. 2015) (upholding

agency's refusal to consider claim that was not presented to agency in timely manner).

In some cases, a second-stage application will raise new issues that could not reasonably have been raised during first-stage proceedings. For example, a second-stage application may be more detailed than the first-stage application or may seek modifications to the project as approved at the first stage. In such cases, the Commission will of course need to consider the impact of the new details or proposed changes. In the present case, however, the second-stage application proposed (1) a smaller building, which would ordinarily reduce any negative impacts, and (2) an increase in the number of affordable housing units, which would add to the project's benefits. In sum, we uphold the Commission's refusal in this case to reconsider the Commission's overall assessment of the benefits and adverse effects of the project.

The objectors do raise some issues that were newly available in the second-stage proceeding. For example, the objectors point out that the first-stage approval order required the developers to provide the Commission with an updated transit-implementation plan when submitting the second-stage application. The objectors contend that the developers failed to provide the required update. That

issue, however, does not appear to have been raised before the Commission. We therefore decline to address the issue in the first instance. *Bostic*, 162 A.3d at 176. For the same reason, we decline to consider the other arguments raised by the objectors for the first time in this court. We do note our skepticism, however, of the objectors' claim that the lack of affordable-housing units on the top two floors of the proposed building means that the affordable-housing units are impermissibly clustered. We are doubtful that distributing affordable-housing units across six floors of an eight-floor building would constitute "clustering" of affordable-housing units. We are also doubtful that failing to put affordable-housing units on the top two floors of the building would violate the Human Rights Act, D.C. Code § 2-1401.01 *et seq.* (2016 Repl.). We need not definitively decide those issues, however, because the claims were not properly presented to the Commission.

For the foregoing reasons, we affirm the Commission's order.

*So ordered.*