*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-AA-0485

WEST END CITIZENS ASSOCIATION, PETITIONER,

v.

DISTRICT OF COLUMBIA ZONING COMMISSION, RESPONDENT,

and

BXP 2100 PENN, LLC, and
THE GEORGE WASHINGTON UNIVERSITY, INTERVENORS.

Petition for Review of a Decision of the Zoning Commission
(Order 06-11Y/06-12Y)

(Argued June 4, 2024                        Decided August 22, 2024)

*David W. Brown* for petitioner.

*Brian L. Schwalb*, Attorney General, *Caroline S. Van Zile*, Solicitor General, and *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Richard S. Love,* Senior Assistant Attorney General were on the statement in lieu of brief in support of intervenors.

*Gary M. Ronan*, with whom *David M. Avitabile* and *Lee S. Templin* were on the brief, for intervenors.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and SHANKER, *Associate Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: Petitioner West End Citizens Association ("WECA") seeks review of a modification order issued by the District of Columbia Zoning Commission ("Commission"). The Commission's order granted Intervenor BXP 2100 PENN, LLC's ("BXP") application for a modification of consequence, allowing BXP to modify signage and relocate an entry door for the George Washington University Campus Bookstore.[1] BXP contends that the bookstore was previously approved as an allowable type of retail for the planned unit development ("PUD") and, therefore, the modifications it requested—changing the signage and relocating one of the entry doors—did not circumvent the type of retail that was approved during the PUD process. BXP further contends that WECA is seizing on BXP's modification application to complain about the unrelated issue of whether a campus bookstore is the type of retail that was approved in the prior PUD proceeding.

WECA contends that the Commission erred because it failed to afford WECA an opportunity for a contested trial-type hearing, as contemplated by the D.C.

---

[1] A modification of consequence is defined as "a modification to a contested case order or the approved plans that is neither a minor modification nor a modification of significance." 11-Z D.C.M.R § 703.3. The regulations list examples, including "a proposed change to a condition in the final order, a change in position on an issue discussed by the Commission that affected its decision, *or a redesign or relocation of architectural elements and open spaces from the final design approved by the Commission*." 11-Z D.C.M.R § 703.4 (emphasis added).

Administrative Procedure Act ("DCAPA"), D.C. Code § 2-509, during which WECA could have presented evidence to oppose BXP's modification application. WECA further contends that the Commission's decision should be reversed even if WECA is not entitled to a contested hearing, because the Commission failed to make sufficient factual findings and its decision did not flow rationally from supported findings. Therefore, the underlying issue we are asked to decide in this case is whether BXP is seeking to alter the use requirements previously approved in the Commission's prior orders by presenting the change as merely a modification of consequence related to signage and relocation of an entrance. Or, alternatively, whether WECA is attempting to use BXP's application for a modification of consequence as a vehicle to contest the use requirements—an issue that WECA should have raised in the earlier PUD proceedings.

This court has jurisdiction to review the actions of the Zoning Commission only in contested cases. *Dupont Circle Citizen's Ass'n v. D.C. Zoning Comm'n*, 343 A.2d 296, 299 (D.C. 1975) (en banc). This court has jurisdiction to determine whether we have jurisdiction, and our jurisdiction to hear a matter may depend upon the decision we reach on the merits. *See Timus v. D.C. Dep't of Human Rts.*, 633 A.2d 751, 758 (D.C. 1993) (en banc) (per curiam). We first decide the underlying issues in this petition for review and then determine whether we have jurisdiction to review this matter. We dismiss the petition for review because we conclude, as we

discuss below, that BXP was not improperly attempting to change the previously approved use and that the Commission properly determined that the application was one for a modification of consequence, which is not a contested case as defined under the DCAPA.

## I.    Factual Background

On February 16, 2006, George Washington University ("GWU") submitted an application seeking a special-exception review and approval of a new campus plan for its Foggy Bottom Campus.  GWU also submitted an application for a first-stage approval of a PUD and another application for related amendments to the zoning maps of the District.  The Commission held public hearings and meetings to consider both applications.  The hearings and meetings were contested, and parties in support of and opposition to the PUD provided testimony and evidence.  On March 12, 2007, the Commission took final action to approve the applications subject to certain conditions, and its decision was detailed in Order No. 06-11/06-12 (the "2007 order").

On April 13, 2017, GWU and Boston Properties (together as "applicants") filed applications for review and approval of modifications to the first-stage PUD and a related zoning amendment, a second-stage PUD, and an application for an amendment to GWU's campus plan (together as "2017 applications").  The

applicants sought approval of an eleven-story commercial office building with ground-floor retail totaling approximately 30,000 square feet (the "Project" or the "21st Street building").

On February 2, 2018, after multiple public hearings and meetings, the applicants submitted additional information regarding signage to clarify the height and width of the tenant sign planned for the 21st Street building façade, as well as clarifications on the use of blade signs by ground-floor retail tenants and the use of illuminating signs. Following a contested hearing on February 12, 2018, the Commission approved the 2017 applications in Order Nos. 06-11O & 06-12O (the "2018 Orders"). The property subject to the application for a modification of consequence is located at 2100 Pennsylvania Avenue, NW (Square 75, Lot 52) (the "Property") and is a part of the PUD.

Five years later, in 2023, BXP, the holder of a ground lease for the Property, sought to accommodate the relocation of the GWU bookstore to the 21st Street building retail space. To facilitate this plan, BXP filed an application for a modification of consequence to modify the location of the signage on I Street and to eliminate the 21st Street entrance. The application sought to maintain the height of the signage while increasing the width to accommodate the name of the Campus Bookstore. BXP reasoned that "The George Washington University Campus Store"

is a lengthy name, and, if restricted by the signage as approved in the original plans, the design would look cluttered and illegible. BXP also explained that the ground floor of the store is located at the I Street sidewalk elevation, but the grade of the sidewalk is higher along 21st Street because of the slope of the street. As a result, retaining the 21st Street entrance would require steps and ramps to navigate the grade change.

WECA submitted its first letter in opposition to the application for a modification of consequence on February 28, 2023, arguing that the relocated campus store was inconsistent with the 2018 Order and was not the type of retail proffered during the consideration of the Project. Instead, WECA claimed, the retail space was intended to provide "new additional community-oriented retail, including hopefully a grocery." WECA did not indicate where in the 2007 or 2018 order, or elsewhere, this agreement was reached. WECA also objected to the changes in signage, and the removal of the 21st Street retail entrance. WECA stressed that these changes constituted a modification of significance, and because a hearing is authorized for a modification of significance, WECA requested a public hearing pursuant to provision 11-Z D.C.M.R. § 400.

After WECA submitted its opposition, BXP sent a letter to the Commission noting that it had engaged in multiple conversations with the Advisory

Neighborhood Commission ("ANC 2A"), WECA, and the Foggy Bottom Association ("FBA"), including individual meetings with representatives of each group. BXP further noted that it discussed its application at the Campus Plan Advisory Committee meeting. BXP noted that as a result of these conversations, the size of the proposed signage was reduced to ensure it remained in scale with other tenants' signage. BXP highlighted that no aspect of the requested modification relates to the use of the property itself and therefore, the campus store is a retail use that falls within the requirements of the Commission's previous orders.

WECA subsequently submitted its second opposition letter restating its arguments and emphasizing that the campus store would occupy more than half of the 30,000 square feet of retail space within the Project and thus undermine the 2007 retail proffer.[2] WECA argued that the 2018 order did not specifically include the relocation of existing university space in the list of permitted uses, and the bookstore was thus an impermissible use. Specifically, WECA requested a public hearing on the application to contest whether the relocation of the campus store was within the use limitations agreed to in the course of the 2018 PUD review and approval process.

---

[2] The Commission's 2007 order included a proffer that the first-stage development of the PUD would contain retail uses subject to certain exceptions, not one of which is applicable in this matter.

The Commission held a public meeting on March 30, 2023 to consider BXP's application for a modification.[3]  It approved the application on the basis that the application was one for a modification of consequence within the meaning of 11-Z D.C.M.R. § 703.3 and 11-Z D.C.M.R. § 703.4.  Accordingly, the Commission approved the application without a public hearing.  *See* 11-Z D.C.M.R. § 703.1 (stating that for efficiency purposes the Commission is allowed to make modifications of consequence, without a public hearing, to previously approved final orders and plans).  WECA noted its appeal directly to this court.[4]

## II.    Standard of Review

When reviewing the Zoning Commission's decision in a contested case, there is a presumption that its decision is correct and, thus, the burden of demonstrating error is on the petitioner who challenges the decision.  *Wheatley v. D.C. Zoning Comm'n*, 229 A.3d 754, 758 (D.C. 2020).  This court reverses the Commission's

---

[3] Pursuant to D.C. Code § 6-641.07, "all meetings of the Board shall be open to the public. The Board shall keep minutes of its proceedings showing the vote of each member upon each question, or if absent or failing to vote indicating such fact, and shall keep records of its examinations and other official actions, all of which shall be immediately filed in the office of the Board and shall be a public record." *See* § D.C. Code 6-641.07(c).

[4] Some appeals may go directly to the Board of Zoning Adjustment (BZA); however, the BZA has only the "limited function" of ensuring the regulations adopted by the Commission are adhered to. *Citizens for Responsible Options v. D.C. Bd. of Zoning Adjustment,* 211 A.3d 169, 187 (D.C. 2019) (quoting *French v. D.C. Bd. of Zoning Adjustment*, 658 A.2d 1023, 1034 (1995)).

decisions only where the court determines that the factual findings and conclusions "were arbitrary, capricious, or an abuse of discretion, or [otherwise] not supported by substantial evidence." *Id.* (quoting *Wash. Canoe Club v. D.C. Zoning Comm'n*, 889 A.2d 995, 998 (D.C. 2005)). "[W]e 'must affirm the Commission's decision so long as (1) it has made findings of fact on each material contested issue; (2) there is substantial evidence in the record to support each finding; and (3) its conclusions of law follow rationally from those findings.'" *Id.* (quoting *Howell v. D.C. Zoning Comm'n*, 97 A.3d 579, 581 (D.C. 2014)).

Nonetheless, we only have jurisdiction to directly review the actions of the Zoning Commission in contested cases and in accordance with the DCAPA. *See* D.C. Code § 2-510; *Dupont Circle Citizen's Ass'n*, 343 A.2d at 299. Under the DCAPA, "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case" is entitled to review by this court. D.C. Code § 2-510. Our jurisdiction to hear a matter may depend upon the decision we reach on the merits, but at the very least, this court always has jurisdiction to determine its jurisdiction. *See Timus*, 633 A.2d at 758 (noting that "every court has judicial power 'to decide all questions, whether of law or fact, the decision of which is necessary to determine the question of jurisdiction'" (internal citation omitted)). Here, we have jurisdiction to assess whether BXP's

application for a modification was a contested hearing and therefore would be subject to our review.

## III.  Discussion

On appeal, WECA argues that they should be afforded the opportunity to have a contested hearing to oppose BXP's application for a modification of consequence. They assert that the modification request is part of the prior PUD proceeding, which was a contested trial-type matter in which they were allowed to participate.[5]  WECA seeks a contested hearing to determine whether the relocation of the campus store adhered to the use limitations agreed upon during the Commission's 2018 PUD review and approval process.[6]

---

[5] WECA asserts that the Commission's decision to deny the parties a hearing should be overturned because it infringed upon WECA's rights as a party to the underlying PUD proceeding.  In *Friends of McMillan Park*, where the PUD application itself was on appeal, we held that a proceeding to evaluate a PUD application is a contested case entitling the involved parties to reasonable notice of the issues involved and an opportunity to present evidence and arguments. *Friends of McMillan Park v. D.C. Zoning Comm'n*, 211 A.3d 139, 144 (D.C. 2019) (citing *Capitol Hill Restoration Soc'y v. D.C. Zoning Comm'n*, 287 A.2d 101, 105 (D.C. 1972)).  Here, unlike *Friends of McMillan Park*, the order on appeal does not pertain to the first or second stage PUD proceeding but rather to an application for a modification of consequence.

[6] The appropriate time for WECA to have addressed disagreements regarding the type of retail in the space was during either the 2007 or 2018 PUD proceedings,

The question, then, is whether this case concerns a modification of consequence or not. WECA conceded at oral argument that if the application is merely a request for a modification to the sign and entrance, it would be a modification of consequence. Specifically, WECA noted, "if all we were discussing were cosmetic changes to the building and the relocation of a doorway, that would not be the kind of change that would necessitate a public hearing." Nevertheless, WECA maintains that this application does more than just that because it allows BXP to use the space for a campus bookstore whereas previously it could not. We see no reason why this modification request, whether granted or not, changes the use-requirements of the PUD as to whether a campus bookstore is a proper retail use. All the application pertains to is the size of a sign and the relocation of a doorway. We do not agree that the PUDs limited the type of retail use. Accordingly, and for the reasons that follow, we agree with BXP and the Commission that the

---

which were contested cases where WECA previously raised objections. *See Friends of McMillan Park*, 211 A.3d at 145 (noting that issues must be presented to the agency at the appropriate time). We generally do not consider contentions that are not presented before the administrative agency at the appropriate time. *Fournier v. D.C. Zoning Comm'n*, 244 A.3d 686, 688 (D.C. 2021) (quoting *Bostic v. D.C. Hous. Auth*, 162 A.3d 170, 176 (D.C. 2017)). This is because "[t]he efficient disposition of [a] case demands that each stage of the litigation build on the last, and not afford an opportunity to reargue every previous ruling." *Id.* at 689 (second brackets in original) (quoting *Williams v. Vel Rey Props., Inc.,* 699 A.2d 416, 420 n.7 (D.C. 1997)). Agencies typically "are not required to reconsider prior decisions in later proceedings, particularly when those decisions have been upheld on judicial review." *Id.* at 689.

application was one for a modification of consequence and thus for jurisdictional purposes, is not subject to our review.

### A. BXP's request was not an attempt to circumvent the type of retail that was approved during the PUD process

The bookstore was a permissible retail as noted in prior orders and was not a change in use to retail previously allowed. Here, BXP is requesting a modification to plans that were previously approved in the 2007 order and the 2018 order. None of the Commission's orders imposed any restrictions limiting the approval to new retail establishments. In its 2007 order, the Commission determined that the plans proposed by BXP would provide project amenities and public benefits including the creation of a "dynamic retail corridor along I Street, providing neighborhood-serving retail services." (the "I-Street Corridor"). The order made clear that the I-Street Corridor would include a proposed mixed-use development to help create "a critical mass of retail." The corridor was to be built up over time "by including ground-floor retail in [u]niversity facilities as they are redeveloped and [] provide opportunities for a variety of retailers, including small local and 'mom and pop' establishments." Specifically, the 2007 order included a proffer that the first stage of the development of the PUD and I-Street Corridor would be used for retail including those uses permitted in the C-1 and C-2 Zone Districts, as limited by 11-Z D.C.M.R. §§ 701.1, 701.4, 721.2, and 721.3. When the 2007 order was approved,

the 1958 version of the D.C.M.R was in effect, and section 701 outlined permitted uses. 11-Z D.C.M.R. § 701 (1958). Specifically, section 701.4(f) allowed bookstores as a retail establishment as a matter of right in the C-1 zone districts. *Id.* (emphasis added). Additionally, section 721 stipulated that any uses permitted in C-1 as a matter of right were also permitted as a matter of right in C-2 zone districts. 11-Z D.C.M.R. § 721 (1958). Further supporting the fact that the space was to be dedicated to retail, the 2007 order included a proffer stating that "75% of the street frontage of each building developed along I Street pursuant to a second-stage PUD approval [would] be occupied by retail space . . . . " This proffer was subject to only a few exceptions that are inapplicable in this instance.

Subsequently, in the 2018 order the approval to construct the building was subject to a condition that the ground-floor retail areas are reserved for "arts, design, and creation; daytime care; eating and drinking establishments; entertainment, assembly, and performing arts; retail; and general or financial services use (provided, however, that financial service uses shall not be located along the Project's I Street ground-floor frontage)."

The 2023 order concluded that the information provided with BXP's modification application for the bookstore signage aligns with the definition of

"Retail" as outlined in 11-B D.C.M.R. § 200.2(bb).[7]  In addition to this definition, the Commission noted that its interpretation of the word "retail" is also supported by the presence of other campus bookstores in similar "retail"-mandated spaces.  While WECA may be correct in its contention that the Commission may change the designation of a modification from one of consequence to one of significance, here, such a change in designation is unnecessary and unwarranted.[8]  The modifications sought by BXP align squarely with the illustration in section 703.4, which allows for an application for a modification of consequence to be based on changes to design or relocation of architectural elements and open spaces.

The 2023 order supports this interpretation.  The order properly noted that the application is not a modification of significance because it is not one for a change in use, nor did it constitute a change to the proffered public benefits and amenities that require consideration as a modification of significance under 11-Z D.C.M.R. §

---

[7] In the regulations, retail is defined as "on-site sale of goods, wares, or merchandise" that are "commonly sold to individuals in small quantities for their direct use" with examples including but not limited to shops, appliances, computers, clothing, and gift boutiques. 11-B D.C.M.R. § 200.2(bb).

[8] 11-Z D.C.M.R. § 703.17(c)(1) notes that when a modification of consequence  is requested, the Commission has the option to "[d]etermine that the request is actually for a modification of significance" and to direct the applicant to refile its request as one "for a modification of significance for which a hearing must be held pursuant to Subtitle Z § 704."

703.6. Additionally, the order notes that the application is consistent with the GWU comprehensive plan assessment, which the Commission previously approved and which does not otherwise undermine the findings and conclusions that supported the order approving the comprehensive plan. The Commission observed that the comprehensive plan policy expressly aims to retain existing businesses and improve the assortment of goods and services available to residents while also supporting neighborhood commercial areas. Further, the 2023 order noted that the application facilitates the continued vitality of the campus bookstore through an improved location that will expand its retail presence and allow it to serve a greater customer base. The 2023 order also noted that the relocated campus store is a "neighborhood-defining" use that is consistent with the retail benefit proffered in its order and will further the activation of the I-Street Corridor in accordance with the campus plan/PUD.

Moreover, the Commission properly determined that the application for modification involved minor adjustments to already-approved signage and storefront design and that the issues revolve around an interpretation of the order containing those conditions. It had substantial evidence to support its findings, and it noted that the support for the application was consistent with its prior orders and the proposed adjustments are consistent with the intent and goals of its prior orders. Arguably, in filing an application for a modification of consequence, BXP took

advantage of the flexibility granted to alter the design, subject to the Commission's approval. Per the 2018 order, the applicant also had flexibility with the design to "vary the final design of the retail storefront and signage" and "[t]o vary other building tenant and identification signage" as shown in and consistent with the plans. The applicant had latitude to vary the "number, size, design and location of retail windows and entrances, signage, awnings, canopies and [similar features] to accommodate the needs of specific retail tenants and storefront design within the parameters set forth in the Storefront and Signage Plan." The order affirmed the applicant's submission regarding signage because sixty feet was a reasonable height for both the letters and the insignia signage planned for the 21st Street façade. Given these facts as detailed in its prior orders and in its 2023 order, it is clear that (a) the Commission has made findings of fact on each materially contested issue of fact, (b) there is substantial evidence to support each finding, and (c) the Commission's conclusions rationally flow from its findings of fact.

## B. The Commission's decision is also supported by its regulations

The regulations provide helpful illustrations to assist in interpreting the types of modifications deemed to be a modification of consequence. The D.C. Code empowers the "Mayor or Council of the District of Columbia to make municipal regulations which are not inconsistent with the provisions" of the Zoning Regulations. *See* D.C. Code § 6-641.10(a). The three types of modifications detailed

in the regulations include: 1) a minor modification; 2) a modification of consequence; and 3) a modification of significance. *See* 11-Z D.C.M.R. § 703. A minor modification is defined as a modification that does not change the material fact upon which the Commission based its original approval. 11-Z D.C.M.R. § 703.2.

A modification of significance is defined as a "modification to a contested case order or the approved plans of greater significance than a modification of consequence." 11-Z D.C.M.R. § 703.5. The regulations outline examples of modifications of significance that include but are not limited to "a change in use, change to proffered public benefits and amenities, change in required covenants, or additional relief or flexibility from the zoning regulations not previously approved." 11-Z D.C.M.R. § 703.6. The regulations further state that the Commission has the discretion to direct an applicant to refile an application as one "for a modification of significance for which a hearing must be held pursuant to Subtitle Z § 704." 11-Z D.C.M.R. § 703.17(c)(1).

A modification of consequence is defined as "a modification to a contested case order or the approved plans that is neither a minor modification nor a modification of significance." 11-Z D.C.M.R. § 703.3. It entails a modification to a contested case order or approved plans, that (a) does not change material facts upon

which the Commission based its approval of the initial application *see* 11-Z D.C.M.R. § 703.2, and (b) is not of significance because it is not a change in use, proffered public benefits, amenities, required covenants, nor does it seek additional relief or flexibility from the zoning regulations not previously approved, *see* 11-Z D.C.M.R. § 703.6 (noting that these are a few examples and may encompass other situations). In contrast to a modification of significance, a modification of consequence can be approved without a public hearing in the interest of efficiency. 11-Z D.C.M.R. § 703.1.

Section 703 provides helpful illustrations to assist with the interpretation of the types of modifications that are of consequence. The examples include "a proposed change to a condition in the final order, a change in position on an issue discussed by the Commission that affected its decision, *or a redesign or relocation of architectural elements and open spaces from the final design approved by the Commission.*" 11-Z D.C.M.R. § 703.4 (emphasis added). Here, BXP requested redesign of the signage, which included adjustments to its width, and a relocation of architectural elements—specifically, the rearranging and removal of the 21st Street entrance, which falls squarely within the enumerated examples included in the regulations. The Commission appropriately classified the application as one for a modification of consequence which, statutorily, does not warrant a hearing before the Commission. It also appropriately exercised its discretion in concluding that

testimony was not needed to evaluate and respond to WECA's opposition, given that WECA had already articulated its arguments in written submissions.

### C. WECA was not entitled to a contested hearing

A contested case is a proceeding before an agency where parties' "legal rights, duties, or privileges" must be determined "after a hearing."  D.C. Code § 2-502; *see Dupont Circle Citizen's Ass'n*, 343 A.2d at 299.  The DCAPA provides procedures governing the process of the hearing, *see* D.C. Code § 2-509, and we have interpreted the phrase "after a hearing" to mean after a trial-type hearing.  *Dupont Circle Citizen's Ass'n*, 343 A.2d at 299.  An administrative proceeding is a contested case when, in addition to having a "trial-type hearing [that] is implicitly required[] either by the organic act or constitutional right," each party has a right to present evidence, testify, and conduct cross-examination.  *Glenbrook Rd. Ass'n v. D.C. Bd. of Zoning Adjustment*, 605 A.2d 22, 38 (D.C. 1992) (citing *Lamont v. Rogers*, 479 A.2d 1274, 1278 (D.C. 1984)); *see Price v. D.C. Bd. of Ethics & Gov't Accountability*, 212 A.3d 841, 844 (D.C. 2019) (stating that a case is considered contested when it involves an adjudicatory hearing focused on evaluating information and determining the rights of the parties involved).

In *Dupont Circle Citizen's Ass'n*, we explained that the case on appeal was not a contested case even though the applicable statute required the Commission to

"afford any person present a reasonable opportunity to be heard." 343 A.2d at 299 (internal citation omitted). We held that a statutory right to a hearing does not, standing alone, confer contested-case status on an administrative proceeding. *Id.* at 299. Rather, the right is conferred after a determination that the hearing is adjudicatory in nature. *See id.* at 299, 301 (noting that in administrative proceedings, contested-case procedural requirements apply when decisions directly affect specific parties' rights). Conversely, when the Commission acts legislatively to make policy decisions affecting the public, these contested case procedural requirements do not apply. *Id.* at 301.

At issue here is an application for a modification of consequence. Unlike in *Dupont Circle Citizen's Ass'n*, neither an organic act nor constitutional right grants WECA a right to a hearing on an application for a modification of consequence. WECA has not identified, nor have we found, a statutory or constitutional basis mandating a hearing for a modification of consequence proceeding. We are unaware of any provision in the organic act or a constitutional right that provides for a right to a trial-type hearing in this case. We further note that no other statute nor the municipal regulations provides a right to a hearing for a modification of consequence. This further supports the Commission's determination that BXP's request for a modification of consequence is not a contested case subject to review by this court. Consequently, in light of the Commission's classification of the

application as one for a modification of consequence, which was not entitled to a contested trial-type hearing, and given that WECA has not identified, nor have we found, a statutory or constitutional basis for a hearing, the petition is accordingly dismissed for lack of jurisdiction. *See Dupont Circle Citizen's Ass'n*, 343 A.2d at 299.

## IV. Conclusion

For these reasons, the Commission's decision is not subject to review by this Court and the petition is accordingly dismissed for lack of jurisdiction.

*So ordered.*